The judges now delivered their opinions
 
 seriatim.
 

 Johnson, J.
 

 This is a writ of error from the circuit court of Virginia to-reverse a judgment in ejectment given for the defendant.
 

 The circumstances of the case come out on a special verdict, from which it. appears, that George Harmer, under whom both parties claim, was a citizen, of the state of Virginia. That on the 25th June 1782, he made a will, by which he devised “ all the estate, both real and personal,which (he) possessed,, or was entitled to, in the commonwealth of Virginia,” to certain trustees-*“in trust and upon these conditions : that when John Harmer, (his) r*.^ brother, (then) a subject of Great Britain, shall be capable of acquiring L property in this country, then they, or the survivor of them, do convey, or-cause to be conveyed, to him, in fee-simple, a good and indefeasible title in. the said estate;” and in case John Harmer should not be capable of acquiring-such right, before his death, he then directs the conveyance to be executed to his nephew, the plaintiff; and in case of his not being capable of. acquiring-lands, before his death, he directs the estate to be sold and the proceeds paid-over to other relations.
 

 In the year 1786, George Harmer executes another will, which, as every part of it is material to the case before us, I will peruse at length. (Here he-read the will of 1786.) The testator died soon after executing the last mentioned will. His brother, John Harmer, died in 1798, having never become-a citizen. The jury further find, that John Lambert, the plaintiff, is a British, subject, was born before the revolution, viz., in the year 1752, and is heir-at-law to the testator. The treaties with Great Britain, and an act of Virginia,, vesting in George Gilmer any interest that may have escheated, are also-found in the verdict. The land sued for is a part of the Marrowbone tract.
 

 The questions suggested are, 1. What estate is conveyed to George Gilmer by the will of 1786 ? 2. If but an estate for life, does the will of 1782 remain unrevoked as to the remainder, so as to convey it to the plaintiff ?' 3. And last. Is John Lambert disqualified to inherit as an alien; or, if incapable, generally as such, is he not protected by the treaties existing; between this government and Great Britain, particularly the 4th article of' the treaty of London ?
 

 To form a judgment on the first point, it is necessary to consider,, *1. The general import and effect of the word estate, as applied to a p*..2g, devise of realty. 2. Whether its general import is controlled or *- altered by the subsequent words, used in a similar sense, in the will off 1786.
 

 I consider the doctrine as well established, that the word estate, made-use of in a devise of realty, will carry -a fee, or whatever other interest thedevisor possesses. And I feel no disposition to vary the legal effect off the word, whether preceded by
 
 my
 
 or
 
 the,
 
 or followed by
 
 at
 
 or
 
 in,
 
 or in the singular or plural number. The intent with which it is used is the decisive-consideration; and I should not feel myself sanctioned in refining away the operation of that intent, by discriminations so minute as those which have been attempted at different stages of English jurisprudence.
 

 The word estate, in testamentary cases, is sufficiently descriptive both off the subject and the interest existing in it. It is unquestionably true, that its-meaning may be restricted, by circumstances or expressions indicative of its-.
 
 *78
 
 being used in a limited or particular sense, so as to confine it to tbe subject .alone ; but certainly, in its general use, it is understood to apply more pertinently to the interest in the subject. To one not accustomed to the -discriminations of technical refinement, it would seem, that no doubt could be entertained as to the interest devised to Gilmer.
 
 The
 
 plain, ordinary import of the words would convey the idea of an absolute disposition of every article of property disposed of by the will. That words of inheritance .are necessary to convey a fee, is certainly a good general rule of the com.mon law ; but, in the case of wills, it is entirely subordinate to expressions ■of the testator’s intention.
 

 In the case before us, there is no necessity for extending the decision of the court beyond the words made use of in disposing of the Marrowbone tract. But it is contended, that the words adopted by the testator, in devising the two other tracts, are used in the same sense as those in the first =!•- oqi devising clause, and being of a *more restricted signification, ought J to limit the word estate to a description of the mere locality. I ■think otherwise. When a word is made use of, to which a clear legal signification has been attached, by successive adjudications, it ought rather, in my estimation, to control the meaning of those of a more equivocal purport. But the construction of a will ought to depend much more upon the evident intent of the testator, than upon the strict import of any term that he may make use of. Too critical an examination of the diction of a will, is rather calculated to mislead the court, than to conduct it to a just conclusion.
 

 I infer the intent of the testator, in the case before us, from the following circumstances, extracted from the special verdict.
 

 1. In the first clause of the will of 1782, the testator makes use of the ■expression
 
 “
 
 all the estate, both real and personal, which I possess, or am •entitled to, in the commonwealth of Virginia,” evidently under an impression that the word estate is sufficient to convey a fee ; because, out of the estate, thus devised to his trustees, he instructs them to convey to his brother, or ■nephew, in the alternative stated, a good and indefeasible title in fee-■simple.
 

 2. There is no reason to infer, from anything in this case, that the testator intended only to make a partial disposition of his property; that he intended to die intestate as to any part of it. The fair presumption generally is, that he who enters upon making a will, intends to make a full distribution of everything that he possesses. That such was the particular intention ■of this testator, I think fairly inferrible from the general nature of the residuary bequest. The word other, in my opinion, is referrible to the whole preceding part of the will, and excludes, as well the lands devised to Gilmer, as the negroes and horses which he directs to be sold. We must give it this construction, or else suppose, either that the word property, here used, is confined to personalty, or, that it includes everything that he possessed, both real and personal; in which latter case, it would comprise even *180] the lands previously disposed *of. It follows, therefore, that in the clause in which he proposes to dispose of the whole residue of his property, he omits making any disposition of any interest in the lands in question ; evidently, as it impresses me, upon the supposition, that he had already disposed of his whole interest in them. What object could the testator propose to himself, by dying intestate as to the remainder in fee, in
 
 *79
 
 the lands in question ? He knew that his heir-at-law was an alien, and, as, isuch, incapable of holding lands under a government to which he did not •owe allegiance. This circumstance is evident, from the will of 1782 ; and it is equally evident, from the same will, that he felt that repugnance, which is common to all men, at the idea of suffering his lands to escheat, and knew the means of preventing it.
 

 I am, therefore, of opinion, upon the first point, that George Gilmer took a fee in the land which is the subject of this suit, and this opinion disposes .also of the second point, and renders it unnecessary for me to consider the third.
 

 Washington, J.
 

 The only question in this cause which I mean to consider is, whether the will of George Harmer, made in 1786, passes to George 'Gilmer an estate in fee, or for life, in the Marrowbone land. The words of the clause containing the bequest are
 
 “
 
 I give to Doctor George Gilmer, of Albemarle county, all the estate called Marrowbone, lying in Henry county,, ■containing, by estimation, 2585 acres, and likewise, one other tract called Horse-pasture, containing, by estimation, 2500 acres ; also one other tract containing, by estimation, 667-?,- acres, called the Poison-field.”
 

 The rule of law most certainly is, that where, in a devise of real estate, there are no words of limitation superadded to the general words of the be•quest, nothing passes but an estate for life ; but since, in most cases, this rule goes to defeat the probable intention of the testator, who, in general, is unacquainted with technical phrases, and is presumed to mean a disposition of his whole interest, unless he uses words of limitation, courts, to effectuate this intention, will lay hold of general expressions in the will, which, from their legal import, comprehend the whole interest *of the testator in the thing devised. But if other words be used, re-[*131 «training the meaning of the general expressions, so as to render it doubtful, whether the testator intended to pass his whole interest or not, the rule of law which favors the right Of the heir must prevail. Thus, it has been determined, that the words
 
 “
 
 all my estate at or in such a place,” unless limited and restrained by other words, may be resorted to, as evidence of an intention to pass, not only the land itself, but also the interest which the testator had in it. But words which import nothing more than a specification of the thing devised, as “ all my lands,” “ all my farms,” and the like, have never been construed to pass more than an estate for life, even when .aided by an introductory clause, declaring an intention to dispose of all his estate. Except for the establishment of general principles, very little aid ■can be procured from adjudged cases, in the construction of wills. It seldom happens, that two cases can be found precisely alike, and in the present instance, I do not recollect that a single one was read at the bar which bears an analogy to it. The case of
 
 Wilson
 
 v.
 
 Robinson,
 
 which comes the nearest to it, is of doubtful authority. No reasons are given by the court for their opinion, and consequently, it is impossible to know, whether it was or was not influenced by other parts of the will.
 
 Ibbetson
 
 v.
 
 Beckwith
 
 was decided upon a manifest intent to pass the inheritance, arising out of the -different parts of the will taken together, amongst which is to be found an introductory clause which, the chancellor says, affords evidence that the testator had in view his whole estate. The cases of
 
 The Countess of Bridge-
 
 
 *80
 

 water
 
 v.
 
 The Duke of Bolton,
 
 and
 
 Bailis
 
 v.
 
 Gale,
 
 only lay down the general-principle, which is not denied, that the word “ estate ” in a will, standing alone, and unqualified by other words, is sufficient to pass the whole of the testator’s interest. The words “ all my land and estate,” in the case of
 
 Barry
 
 v.
 
 Edgeworth,
 
 express so plainly an intention to give a fee, that I only wonder a question could have been made of it. They are quite as strong-as if the testator had given the land, and all his interest in the land, where the word estate or interest, unless construed as was done in that case, would have been perfectly nugatory. In
 
 Goodwin
 
 v.
 
 Goodwin,
 
 the Chancellor doubted whether the word estate was not so limited and restrained by strong, words of locality and description as to deprive it of the interpretation generally given to it.
 

 *In the case now under consideration, there is no introductory clause, declaratory of an intention in the testator to dispose of the-whole of his estate ; yet, I admit, that if he had devised all his estate called Marrowbone, without using other words calculated to limit the technical meaning of the word estate, the cases cited by the defendant’s counsel would establish, beyond a doubt, that a fee passed. But I cannot read this clause of the will, without feeling satisfied, that the testator did not mean, to use the word estate in its technical sense. For he not only varies the description of the tracts of land called Horse-pasture and the Poison-field, so as to show that, with respect to them, he only meant to describe their situation and quantity; but by using the word “ other,” it is plain, that with respect to the Marrowbone estate, his design was the same. Unless, in the disposition of this latter estate, he had described or intended to describe it,, as so much land, he could not, with any propriety, speak of the Horse-pasture estate as another tract of land. It will hardly be said, that the devise of the last tracts passes more than an estate for life, unless the word estate,, before used, can be transferred to those tracts, so as to impart to the expressions there used, the technical meaning given to the word estate, where it stands alone. But I cannot perceive how this is to be done, without supplying words not used by the testator, and which there is no necessity for doing, in order to make sense of the clause as it stands. It would, I think,, be going too far, to supply more than is necessary to make each devise a complete sentence, and then to introduce the preposition “in” for the-purpose of making sense of the whole. Yet, if this be not done, the word estate cannot, in respect to the Horse-pasture and the Poison field tracts,, be pressed into the service, and made in any manner to fit the sentence.
 

 If only an estate for life in the Horse-pasture and the Poison-field tracts passed to George Gilmer, it will, I think, be very difficult to maintain that, the word estate, in the same sentence, governed by the same verb, and coupled with the words which describe those tracts of land, can be construed, to pass a fee.
 

 The testator certainly uses the words estate and tract of land as synonymous expressions ; and then the question will be, whether the generality of 3. -, the first shall enlarge *the plain and usual import of the latter words,. J or, the latter restrain the technical meaning of the former ? I know of no case, where the word estate is used at all, in which its general import is limited and restrained by so many and such strong expressions descriptive of the land, and totally inapplicable to the interest of the testator, a&
 
 *81
 
 in the present. The words, the estate called Marrowbone, lying in Henry county, containing, by estimation, so many acres, excite, at first, no other ideas than such as respect the name and situation of the land, with the number of acres contained in it. The description would be equally accurate, whether the interest of the testator were a fee, or a term for years.
 

 If, then, we are to search after and to effectuate the intentions of men, supposed to be unacquainted with legal phrases, and are, on that account, to construe the words they use, with indulgence, I think, we shall be more likely to fulfil this duty, by limiting the general import of a technical word, which, in its common use, is entirely equivocal, and is rendered particularly ambiguous in this case, by the words which immediately attend it, than by giving to the words “ tract of land,” a meaning which they do not, in themselves, import, and are seldom, if ever, used to express more than a local description of the thing itself.
 

 As the opinion of a majority of the court is in favor of the defendant, upon the construction of the will, I do not think it necessary to say anything upon the doctrine of alienage, as that question may possibly come on, in some other case, in which it must be decided.
 

 Paterson, J.
 

 The devise in the will of George Harmer was intended to convey some interest in the Marrowbone farm to George Gilmer ; and the quantity of interest, whether for life or in fee, is the question now to be considered. It is a fundamental maxim, upon which the construction of every will must depend, that the intention of the testator, as disclosed by the will, shall be fully and punctually carried into effect, if it be not in contradiction to some established rule of law. In such case, the intention must yield to the rule. This intention is to be collected from the instrument itself, and not from extrinsic circumstances; and therefore, the *will of A. can afford little or no aid in discovering the intention and expounding the will of B. Indeed, the number of cases which are usually cited in arguments on devises, tend to obscure rather than to illuminate. When, however, a particular expression in a will has received a definite meaning, by express adjudications, such definite meaning must be adhered to, for the sake of uniformity of decision, and of security in the disposal of landed property. It cannot be questioned, that the word “ estate ” will carry everything, both the land and the interest in it, unless it be restrained by particular expressions ; for estate is
 
 genus generalissimum,
 
 and comprehends both the land and the inheritance. 1 Salk. 236; 6 Mod. 106; Pr. Ch. 264; 2 P. Wms. 524; Cas. temp. Talbot 157; 1 Ves. 226; 2 Ibid. 179; 3 Atk. 486; 5 Burr. 2638; 1 T. R. 411. The word “estate” is the most general, significant and operative that can be used in a will, and according to all the cases, may embrace every degree and species of interest. If the word
 
 “
 
 estate ” stand by itself, as if a man devise “alibis estate to A.,” it carries a fee, from its established and legal import and operation. Standing thus
 
 per se,
 
 it marks the intention of the testator, passes the inheritance to the devisee, and controls the rule in favor of the heir-at-law. It is true, that this word, when coupled with things that are personal only, shall be restrained to the personalty.
 
 JSToscitur á sociis.
 
 The word “ estate ” may also, from the particular phraseology, connected with the apparent intent of the testator, assume a local form and habitation, so as to limit its sense to the land itself. Here, uncommon par
 
 *82
 
 ticularity of description is requisite, so as to leave the mind perfectly satisfied, that the thing only was in contemplation, and nothing more. A description merely local cannot be extended beyond locality, without departing from the obvious import of the words ; and thus making, instead of construing, the will of the testator. But when no words are made use of, to manifest the intention of the testator, that the term “ estate ” should be taken, not in a general, but in a limited signification, then it will pass a fee; because the law declares, that it designates and comprehends both the subject and the interest. Nay, such is the legal import and operation of the word
 
 “
 
 estate,” that it carries a fee, even when expressions of locality are annexed.
 

 To illustrate this position by apposite and adjudged *cases : If a man, in his will, says, “ I give all my estate in A.,” it has been held, that the whole of the testator’s interest in such particular lands passed to the devisee, though no words of limitation are added. 2 P. Wms. 524. So, the word “ estate ” was held to carry a fee, though it denoted locality, “ as my estate at Kirby-IIall.”
 
 Tuffnel
 
 v.
 
 Page,
 
 2 Atk. 37; s. c. Barnard. Ch. 9. On which, Lord Hardwicks observed, that though this is a locality, yet the question is, whether it is such a locality as is sufficient to show the testator’s intention merely to be to convey the lands themselves, and not the interest in them. He was of opinion, that the words were descriptive both of the local situation, and the quantity of interest. And in
 
 Ibbetson
 
 v.
 
 Peclcwith,
 
 Lord Talbot observed, that the word “ estate,” in its proper, legal sense, means the inheritance, and carries a fee. Why, indeed, may not locality and interest be connected, and the same words express and convey both. To exclude interest in the subject, the expressions coupled with the word
 
 “
 
 estate ” must be so restrictive and local in their nature, as to convey solely the idea of locality, and not to comprehend the
 
 quantum,
 
 of interest, without doing violence to the words and intention of the testator. Besides, it is a just remark, repeatedly made by Lord Hardwick® and Lord Mansbteld, that where a general devise of land is narrowed down to an estate for life, the intention of the testator is commonly defeated, because people do not distinguish between real and personal property; and, indeed, “ common sense would never teach a man the difference ;” and therefore, judges have endeavored to make the word “ estate,” in a will, amount to a devise of the whole interest, unless unequivocal and strong expressions are added, to restrict its general' signification. It would be a laborious and useless task, to enter into a minute and critical investigation of the great variety of cases which bear on this subject. They are collected in a note by the editor of Willes’ Rep. 296.
 

 From the whole scope and complexion of the will of George Harmer, it is evident to my mind, that the testator intended to dispose of all his property, both with regard to the quantity and quality thereof. He did not mean to die intestate, as to any part of his estate; but on the contrary, it was his manifest intention, to leave nothing undisposed by his will. He *1361 <^rec<:s ^hat all his negroes, *horses and other property be sold, &c., J which plainly indicates what his intention was in regard to the lands which he had previously devised. This last clause evinces and illustrates the meaning of the testator, and removes every particle of doubt from my mind, as to the true construction which ought to be put on the word “ estate.”
 
 *83
 
 'To effectuate this intention, the term “ estate ” is to be taken in its largest signification, as comprehending both the subject and the interest, the land .and the inheritance.
 

 Amidst the great mass of cases arising on wills, it is impossible to select any two that are exactly similar. The variety of expressions is infinite; •and it is from the language, that we are to discover the intent. The same word, indeed, may be taken in a different sense in different wills, and even in different parts of the same will, owing to 'its juxtaposition, its associations, and the manner in which it is placed and used. The case of
 
 Bailis
 
 v.
 
 Gale,
 
 in 2 Ves. 48, may serve to elucidate the devise under review, in more'points than one. “ I give to my son, Charles Gale, all that estate I bought of .Mead, after the death of my wife.” These expressions seem strongly to mark locality in contradistinction to interest. But, what says my Lord Hardwicke? “I am of opinion, that both the thing itself, and the estate, .property and interest the testator had, pass by the devise. Several questions have arisen in courts of law and equity, on devises of this kind; but all the latter determinations have extended and leaned as much as possible to make words of this kind comprehend, not only the thing given, but the •estate and interest the testator had therein. But it is objected, the pronoun “ my ” is not added ; there was no occasion for it. It was necessary, he should use sueluwords as point out the whole interest in the land, which is •sufficiently done by the other words ; for he bought of Mead, the land and the fee-simple in the land; which is agreeable to the construction of the word estate, being sufficient to describe the thing, and the interest, as it is in the ■case of all
 
 my
 
 estate.”
 

 So, in the present will, the words,
 
 “
 
 I give all the estate called Marrow-bone,” contain a description of the land, and the interest in it. The case in Vesey is particularly Applicable, and worthy of attention, in another respect, as it affords a complete answer to the distinction which was <- ingeniously raised, and attempted to be sustained between the import of the word
 
 “
 
 my ” and
 
 “
 
 the ” in devises like the present. The counsel for Lambert contended, that the word
 
 the, “
 
 all the estate,” was descriptive of the thing ; whereas, the word
 
 my, “
 
 all my estate,” was descriptive of the interest as well as of the thing. But, in the case of
 
 JBailis
 
 v.
 
 Gale,
 
 Lord Hardwicke held, with great clearness, that there was no difference between a device of all
 
 my
 
 estate at N., and a device of all
 
 the
 
 estate at N.; and that a fee passed, in either case. Nor ought this opinion to be considered as extrajudicial; for the counsel in
 
 JBailis
 
 v.
 
 Gale
 
 insisted, that the pronoun
 
 my
 
 was necessary to make the devise carry a fee; and therefore, it claimed, very properly, the notice and decision of the court. According to this opinion, a devise of the estate called Marrowbone, in the county of Henry, must have precisely the same construction and effect, as a devise of all my estate ■called Marrowbone, in the county of Henry; which, it appears to me, would unquestionably give a fee.
 

 Some expressions in a will, as, “I give my farm, my plantation, my house, my land,” do, of themselves, contain no more than a description of the thing, and carry only an estate for life, because unconnected with words of inheritance, or other words of a similar import. For we are not permitted to enlarge the estate of a devise, unless the words of the devise itself be sufficient for that purpose. In the present devise, the words,
 
 “
 
 all the estate
 
 *84
 
 called Marrowbone,” are competent to carry the degree of interest contended for on the part of the defendant; and this construction accords with the-intention of the testator, as disclosed by his will. Whether it would not have been more beneficial to society, to have observed, from the first, the same technical phraseology and strictness of legal terms in devises, as in conveyances of landed property, is a question which may amuse the theoretical jurist; but which, as judges, we cannot seriously discuss; for it is a leading, axiom in our system of jurisprudence, not to be shaken by judicial authority, *198l the intent of the testator, so far as it is consistent with the principles of law, must be attended to, and control the decision. I am,, therefore, of opinion, that the words, “ I give to George Gilmer all the estate called Marrowbone, in the county of Henry,” give a fee, being descriptive equally of the quantity of interest, and locality of the thing devised.
 

 Cushing, J.
 

 The first question in this case is, whether the devise to-George Gilmer, in the will of George Harmer, made in 1786, carries a fee,, by the words “ all the estate called Marrowbone, in the county of Henry, containing, by estimation, 2585 acres of land,” &c.
 

 Wills are expounded more favorably, to carry the intent of the testator into effect, than conveyances at common law, which take effect in the lifetime of the parties; wills being frequently made by people enfeebled by age or indisposition, and without the aid of counsel learned in the law. Therefore, words not so technical for the purpose, have, in a great variety of cases, for above a hundred years, been construed by the judges, to carry a, fee, which would not do so in a deed.
 

 In a number of cases, the word “ estate ” has been determined to comprehend the whole interest in the land. Among those adduced, there are several which appear to me essentially in point to the present case. In the case, 2 Lev. 91 (a case which has since been held, by good judges, to be good law),, a devise of “ all my tenant-right estate, at B., in Underbarrow,” was determined to import a fee. I see no essential difference between that case and. this; except the particle “the” instead of the pronoun “my,” which, in common sense, and in the opinion of Lord Hardwicke, makes no difference. “All
 
 the
 
 estate” is, at least, as extensive and comprehensive as “all
 
 my
 
 estate.” In 2 P. Wms. 523, the words “ all my lands and estate in Upper ^3„i Catesby, in Northamptonshire,” were adjudged *to carry a fee. That. J agrees with the ease at bar, except that the word “ lands,” precedes- “ estate,” which I think immaterial. “ Estate ” is the most operative word.. In the case of
 
 Bailis
 
 v.
 
 Gale,
 
 2 Ves. 48, a devise of “ all that estate that I. bought of Mead,” was determined by Lord Hardwicke to be of a fee. This, I think, is substantially like the case at bar ; and by him, that,
 
 the
 
 or
 
 my,.
 
 makes no material difference. Add to this, what seems to make the point conclusive, the testator appears to have a design to dispose of his whole estate.
 

 The other cases cited do not appear to contradict these ; but, varying in some circumstances, seem not so directly applicable ; yet, by the spirit and reasonings attending them, they tend to confirm the rectitude of the other ' decisions which are more directly in point.
 

 The latter part of the devise in question, of several tracts of land immediately succeeding the devise of “all the estate called Marrowbone, in the county of Henry,” &c., if considered as not carrying a fee, I conceive, would
 
 *85
 
 ■not, however, control or restrict the prior part of the devise of
 
 “
 
 all the •estate called Marrowbone,” &c. Rather than that, I should suppose the former part would carry spirit and meaning to the
 
 latter. But
 
 that is not -necessary now to be determined. This first point being determined in favor of the defendant, the former judgment must be affirmed.