[S. F. No. 5885. Department One.—November 22, 1911.]

In the Matter of the Estate of JAMES W. HENDERSON, Deceased.

WILL—INTERPRETATION—TESTATOR'S INTENT.—The primary purpose of all interpretations of wills is to ascertain the testator's intent, as disclosed by the language he has used. Each case depends upon its own peculiar facts, and precedents have comparatively little value.

ID.—CONSTRUCTION OF TECHNICAL WORDS.—While technical words in a will are ordinarily to be taken in their technical sense, they will not be so taken when it appears that they were used in another sense by a testator who drew his will without an acquaintance with the technical sense.

CLXI Cal.—12

ID.—GIFT OVER OF LEGACIES WHEN INCLUDES DEVISES.—Where in a holographic will the testator, after making various gifts of both personal and real property without using the technical word "devise" or "devisee" to distinguish the gift of realty, speaks of the residue of his estate, after paying all the "bequests herein provided for," and after disposing thereof, provides that "should any of the legatees herein provided for die before my death, then the legacy provided for him or her shall be divided equally among the residuary legatees," such gift over of legacies will be construed to include both real and personal property.

ID.—GIFT OVER OF PROPERTY PASSING UNDER RESIDUARY CLAUSE.—A will, after making various pecuniary bequests and specific dispositions of both real and personal property, gave certain land and specific personal property to the testator's wife, and in the residuary clause, by separate individual provisions, disposed of the residue of the estate, which consisted of both real and personal property, in undivided one-quarter shares to his wife and three children. After so disposing of the residue the will provided that "should any of the legatees herein provided for die before my death, then the legacy provided for him or her shall be divided equally among the residuary legatees." *Held*, that upon the death of the wife prior to that of the testator, the property, whether real or personal, that would have passed to her under the will had she survived, including what would have passed under the residuary clause, did not lapse, but passed under the gift over to the three surviving residuary legatees.

ID.—GIFT OVER TO RESIDUARY LEGATEES AS CLASS.—The gift over contained in such substitutionary clause is to the residuary legatees as a class.

ID.—WHEN GIFT IS TO A CLASS.—In legal contemplation a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number.

ID.—GIFT OVER TO CLASS FOR PURPOSE OF PREVENTING INTESTACY.—In seeking to ascertain whether a gift is to a class, the paramount consideration is the intent of the testator, as derived from the entire instrument. To this apparent intent, rules of construction must always yield. In such will the substitutionary clause, including the gifts over of the residue itself, was added for the very purpose of preventing intestacy as to any part of the estate.

APPEAL from a decree of the Superior Court of Humboldt County partially distributing the estate of a deceased person. Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

E. W. Wilson, for Appellant.

Denver Sevier, and J. F. Coonan, for Respondent.

SLOSS, J.—This is an appeal from a decree of partial distribution. James W. Henderson died on July 13, 1910, leaving a will which was admitted to probate in the county of Humboldt. The will, which was holographic, was dated October 3, 1905. By its first and second paragraphs the testator declares his desire to save trouble to his wife and children and to deal justly and fairly by all for whom he makes provision, and appoints as executors his wife, Amelia J., his daughters, Ida H. Sevier and Alice J. Henderson, and his son, George Y. Henderson. Paragraph 3d, disposing of the estate, reads as follows:—

3rd. That after paying all my just debts and funeral expenses the rest and residue of my estate shall be disposed of as follows, viz.:

"To my grandchildren Abby J. Sevier one thousand dollars, to Henry Sevier one thousand dollars, to Stanley Sevier one thousand dollars, to Ernest Sevier one thousand dollars, to Randolph Sevier one thousand dollars, to Josephine Sevier one thousand dollars and to Helen Sevier one thousand dollars.

"Also to my grandchildren of my son E. W. Henderson, deceased: To James W. Henderson ten thousand dollars and to Ruth five thousand dollars, and to their mother Eda Henderson, five hundred dollars and all my interest in the house and lot on Seventh Street, in Eureka, where she now resides with her family.

"To my sister, Bell H. Love, of Boulder, state of California, one thousand dollars.

"To Cora Cattemole (nee Cora Love) five hundred dollars.

"To my sister, Martha Coombs, now of Windsor, Canada, one thousand dollars.

"To David H. Henderson, one thousand dollars and all interest I have in his farm in the town of Norfolk, in the County of St. Lawrence, State of New York, where he now resides.

"To my dear wife, Amelia J., the homestead where we now reside on the corner of 4th and H Streets, Eureka, California, and all furniture, books and pictures, and all my jewelry and one-fourth interest in all the rest and residue of my estate after paying all the bequests herein provided to be paid.

"To my daughter, Ida Sevier, one-quarter interest in the residue of my estate, after paying the bequests herein provided for.

"To my daughter Alice J. Henderson, one-quarter interest of the residue of my estate after paying the bequests herein provided for.

"And to my son George Y. Henderson one-quarter interest of the residue of my estate after paying the bequests herein provided for.

"Should any of the legatees herein provided for die before my death, then the legacy provided for him or her shall be divided equally among the residuary legatees.

"My executors shall have power to collect, buy, sell, or trade in any of the property hereby bequeathed, and so far as possible to avoid the interference of courts."

The wife, Amelia J. Henderson, died after the making of the will and before the death of the testator. Surviving the testator as his heirs at law were his son, George Y. Henderson, and the two daughters, Ida Sevier and Alice J. Henderson, named as executor and executrices of his will, and two grandchildren, James W. Henderson and Ruth Henderson, son and daughter of E. W. Henderson, a son of the testator, who had died prior to the making of the will. The proceedings now before us were instituted by a petition for partial distribution presented by George Y. Henderson, Ida Sevier, and Alice J. Henderson, the surviving children of the testator. By such petition they asked distribution to them of the entire residue of the estate over and above the amount required for payment of the cash legacies and the devises of interests in real property given by the will to Eda Henderson and David H. Henderson respectively. The contention of the petitioners was that they were entitled to receive equal one-third shares of the residue, including the property devised and bequeathed to the testator's wife, Amelia J. Henderson. On the other hand, the granddaughter Ruth Henderson, who was a minor and appeared by her guardian, opposed the application and filed a petition on her own behalf for partial distribution, her contention being that the bequests and devises to the wife, Amelia J. Henderson, lapsed by her death and passed to the heirs at law of whom said minor was one. The court below granted partial distribution as prayed by the surviving son and daughters of the decedent. The granddaughter appeals.

The correct solution of the problem so presented depends principally upon the meaning of the following clause of the will: "Should any of the legatees herein provided for die before my death, then the legacy provided for him or her shall be divided equally among the residuary legatees." The widow was herself one of those to whom the residue was given. The distribution to the respondents of the share which she would have taken requires a holding: 1. That the widow is included in the phrase "any of the legatees herein provided for" in the substitutionary clause; and 2. That the gift over is to the takers of the residue as a class, and is, consequently, to be divided among those members of the class who may survive the testator.

The primary purpose of all interpretation of wills is, of course, to ascertain the testator's intent, as disclosed by the language he has used. (Civ. Code, sec. 1317.) Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. "Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills. It seldom happens that two cases can be found precisely alike," says Washington, J., in *Lambert's Lessee* v. *Paine,* 3 Cranch, (U. S.) 131, [2 L. Ed. 377]. (*Rosenberg* v. *Frank,* 58 Cal. 387, 411; *Le Breton* v. *Cook,* 107 Cal. 410, 416, [40 Pac. 552].) It is particularly important to bear this in mind in considering two cases presently to be mentioned as strongly relied on by the appellant.

In the case at bar, the appellant contends that the testator made a distinction between "legatees" and "residuary legatees," and that the latter were not described as among those whose "legacies" were, in the event of their death to go to the residuary legatees. As a mere matter of definition, the word legatees includes residuary as well as other legatees. But if the two expressions are to be differentiated, the widow (whatever may be said of the surviving daughter and son) certainly answered the designation of "legatee," in addition to that of "residuary legatee." She is given, not only a share in the residue, but the testator's furniture, books, pictures, and jewelry. As to these items she is clearly a legatee, and the property so bequeathed to her is a legacy. To this extent, at

least, the provision for her falls within the express terms of the substitutionary clause. It is hardly to be supposed that the testator designed that the property specifically bequeathed to his widow should go as directed if she should die, while the residuary provision for her should lapse and pass to his heirs as undisposed of. No intent to make such distinction appears on the face of the substitutionary clause.

The appellant argues, further, that, inasmuch as the estate (and the residue) included both real and personal property, such real property as was contained in the residue could not be covered by a gift over of "legacies" given to "legatees." But, while technical words in a will are ordinarily to be taken in their technical sense, they will not be so taken when it appears that they were used in another sense by a testator who drew his will without an acquaintance with the technical sense. (Civ. Code, sec. 1327; *Estate of Peabody*, 154 Cal. 173, [97 Pac. 184].) The will before us was, as we have said, holographic, and it is perfectly clear from its provisions that the testator was unfamiliar with the distinctions between terms appropriate to testamentary gifts of personal and those of real estate. Although the estate comprised realty, the will does not contain the word "devise" or "devisee." The testator makes gifts of his interest in 'real estate, and then speaks of the residue, after paying all the "bequests herein provided for." He makes provision for "residuary legatees," but says nothing of "residuary devisees." It is plain, therefore, that the testator used the terms "bequests," "legacy," "legatees," and "residuary legatees" loosely, and without regard to their exact technical meaning. In order to give full effect to these expressions they must be read as referring to gifts and takers of realty, as well as of personal property.

The position that the widow, unquestionably a legatee taking a specific legacy, is excluded from the operation of the substitutionary clause can be supported only by making the gift over dependent upon the death of legatees receiving *pecuniary* legacies. This construction would, however, require us to write into the clause words of qualification not used by the testator—a course which is unauthorized unless required to carry out the intent disclosed by the entire instrument. We find nothing in this will tending to show that Henderson meant "pecuniary legatee" when he said "legatee." Again,

the construction urged by appellant would lead to intestacy as to one fourth of the residue, a result that is not presumed to have been intended (Civ. Code, sec. 1326), particularly where, as here, the will as a whole indicates that the testator intended to dispose of all the property he should leave. (*O'Connor* v. *Murphy,* 147 Cal. 148, [81 Pac. 406]; *Estate of Lux,* 149 Cal. 200, [85 Pac. 147].)

Two cases are cited by appellant, who confidently asserts that they require a contrary holding to that above indicated. Of each of them it may be said that the language construed differs materially from that used in the Henderson will. As we have suggested, great caution must be exercised in seeking to apply to one will the interpretation which has been given to another. In *Estate of Richards,* 154 Cal. 478, [98 Pac. 528], the will, after providing for the payment of certain enumerated legacies, gave and bequeathed the rest, residue and remainder of the estate, of whatever kind and character, to testator's two brothers, William S. and Francis Richards. It then went on: "In the event of the death of any one or more of the legatees herein named, before they, or either of them, shall have received their bequests, the share of such deceased legatee or legatees shall be paid to my brother William S. Richards." Francis died before distribution. The court held that his share of the residue did not, by virtue of the substitutionary clause, pass to William S. Without going into the matter at length, we may point out that this conclusion was based upon and fully justified by a number of considerations which are not applicable to the Henderson case. The will of Richards did not speak of the brothers to whom the residue of real and personal property was given as legatees; it provided for a gift over in the event of the death of one or more of the "legatees" (a term not including, as it does here, any of the residuary beneficiaries); it made these gifts over take effect in case of death of legatees before receiving their bequests, thus referring to payment of bequests in course of administration, rather than to the receipt of a part of the residue, which would take place only upon distribution; it provided that the share of the legatee dying should be "paid" to W. S. Richards, a form of expression apt with reference to money legacies, but inappropriate if applied to a devise and bequest of a residue comprising real and personal prop-

erty.  The other case referred to is *Lyman* v. *Coolidge,* 176 Mass. 7, [56 N. E. 831].  There a codicil to the will provided that, in case of the death of certain legatees, their legacies should be paid to their legal representatives.  It then declared that "if any of the other legatees named in my will or codicils thereto shall die before my decease, the legacies therein given shall lapse, and the amount thereof shall be included in the residue of my estate."  The last part of the clause, i. e., "shall be included in the residue" was held by the court to "show that the testatrix had in mind something outside of the residuary estate which was to fall into it." But this reasoning cannot be said to control the meaning of the very different language now before us.  The Henderson will does not say that anything is to be "included in the residue" but that "legacies" (a word used in the will as equivalent to "legacies and devises") "shall be divided equally among the residuary legatees."

The remaining point to be considered is whether the gift over is to the residuary legatees as a class.  In *Estate of Murphy,* 157 Cal. 63, [137 Am. St. Rep. 110, 106 Pac. 230], this court quotes with approval the following definition found in 6 Jarman on Wills, section 232: "In legal contemplation a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number."  Taking the substitutionary clause alone, its gift of legacies of legatees dying to "be divided equally among the residuary legatees" would seem to fulfill every requirement of this test.  Thus, it is said in the Murphy case that a devise to "the four children of my late sister Catherine" without further words, would amount to a devise to a class.  In that case, however, the words quoted were coupled with further language: "that is to say, I give, devise and bequeath all the rest of my . . . estate, . . . share and share alike, to Timothy J. Flynn, William D. Flynn, Mary Jane Logan and Kate I. Prendergast."  The fact that the clause, read as a whole, made a gift to the devisees *nominatim* was held to indicate an intent that they should take individually as tenants in common.  It is true that in the original gift of the residue in this case, undivided

one-fourth interests are given to the widow and children by
separate individual provisions. But the substitutionary clause
is separate and distinct from this. It deals with a different
subject and is not necessarily controlled by the preceding
designation of individuals. Neither the Murphy case, nor
the other decisions of this court, relied on by appellant (*Estate
of Morrison*, 138 Cal. 401, [71 Pac. 453]; *Estate of Hittell*,
141 Cal. 432, [75 Pac. 53]) present a form of disposition like
the one here involved. The Hittell will simply bequeathed all
the testator's property to two persons named. It contained
no element of a class designation. The will of Morrison con-
tained a gift of the residue to be divided between testator's
sister (named) and her daughters and a brother (named) of
the testator. There were two daughters of the sister. It was
held that this was a gift to the four beneficiaries as individ-
uals, and not a gift of one half to a class composed of the
sister and her two daughters, nor a gift of a third to a class
composed of the daughters. There was no claim, and no room
for a claim, that the four persons who were to take constituted
a class. These circumstances, coupled with other indications
of the entire will, fully justified the conclusion that gifts to
four individuals were contemplated. But the case is very
different from one where a gift, complete in itself, is to the
residuary legatees.

The cases above cited emphasize the point that, in seeking
to ascertain whether a gift is to a class, the paramount con-
sideration is the intent of the testator, as derived from the
entire instrument. To this apparent intent, rules of construc-
tion must always yield. In the case at bar the interpretation
of a gift to a class is strengthened by a view of the will as
a whole. The substitutionary clause, including, as we read it,
gifts over of the residue itself, was added for the very purpose
of preventing intestacy as to any part of the estate. This
purpose would be accomplished by division of the share of
any legatee dying among the survivors of those who were to
take the residue. It would be defeated, and an inharmonious
result would follow, if a part of such share were to pass as
undisposed of, while the rest would go to the survivors of the
residuary legatees. In the particular event which has oc-
curred, i. e., the death of the widow, it will be observed that
the construction contended for by appellant would result in

having. three fourths of her share go over, while creating a lapse as to one fourth of the very interest with respect to which the testator designed to prevent a lapse. The rule favoring a construction against intestacy applies with special force to this feature of the case.

Without undertaking to review all of the many cases cited by the respective parties, we state our conviction that the conclusions reached by the court below on both questions herein discussed are in harmony with the weight of authority, and that they give effect to the testator's actual intention.

The decree is affirmed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.