[Sac. No. 2083.   Department Two.—October 6, 1913.]

In the Matter of the Estate of INEZ A. BUDD, Deceased. CLARA A. WEBSTER et al., Appellants, v. JOHN T. THORNTON et al., Respondents.

[Sac. No. 2085.   Department Two.—October 6, 1913.]

In the Matter of the Estate of INEZ A. BUDD, Deceased. TRUSTEES OF STOCKTON FREE PUBLIC LIBRARY et al., Appellants, v. H. R. McNOBLE et al., Respondents.

[Sac. No. 2103.   Department Two.—October 6, 1913.]

In the Matter of the Estate of INEZ A. BUDD, Deceased. VAREE TULLY et. al., Appellants, v. JAMES BUDD DIXON, Respondent.

WILL—CHARITIES—GIFT TO PUBLIC LIBRARY WITHIN THIRTY DAYS OF DEATH.—A bequest for the benefit of a city library is a donation for charitable purposes, and is invalid, under section 1313 of the Civil Code, if the will is executed within thirty days of the death of the testatrix.

ID.—BEQUEST FOR PUBLICATION OF BIBLE—UNCERTAINTY.—A direction in a will to sell the diamonds of the testatrix and use the proceeds in the publication of her "revised edition of the New Testament, Oxford's King James Version," is void for uncertainty.

ID.—BEQUEST OF INCOME—POSTPONEMENT OF ENJOYMENT TILL LEGATEE'S MAJORITY.—A bequest of one-half of the income from certain real properties to the nephew of the testatrix to be deposited in bank

and there remain until he arrives at the age of twenty-one years, when the fund "shall then become and be his property," is valid. It is not void as a bequest of a future contingent interest, nor as an unauthorized "accumulation" of assets, nor as a suspension of the power of alienation for a period not provided by law, nor as a creation of a trust not permitted by law. The bequest is a vested interest.

ID.—INCOME OF ESTATE—WHEN FOLLOWS FEE.—In case an estate vests immediately in a devisee, because of the invalidity of attempted limitations, the income and use of the property follow the fee.

ID.—VESTING OF LEGACY—PRESUMPTION IN FAVOR OF.—Testamentary dispositions, devises, and bequests to a person on attaining majority are presumed to vest at the testator's death.

ID.—CHARITIES—LEGACY TO RELIGIOUS ASSOCIATION—SECTION 1313 OF CIVIL CODE.—A bequest of one-half of the income of certain property to an incorporated association known as the "Christ Doctrine Revealed and Astronomical Science Association," to be used in the publication of the books of the testatrix, is a charitable gift and void under section 1313 of the Civil Code if the will is executed within thirty days of her death.

ID.—DEVISE—VESTING OF ESTATE—CONDITION SUBSEQUENT.—A devise by words of direct present tense of real property to be distributed and delivered to the devisee when he shall have attained the age of twenty-one years, and shall have signified his consent in writing to carrying on the life work of the testatrix as indicated by the articles of incorporation and by-laws of the "Christ Doctrine Revealed and Astronomical Science Association," in which event he shall take in fee simple, otherwise the property shall remain a part of the general estate and go to such association, is a gift upon condition subsequent and vests in him a present estate.

ID.—DEVISE OF FEE—SUBSEQUENT WORDS CUTTING DOWN.—Words subsequently used, which merely raise a doubt or suggest an inference, will not be construed as limiting or cutting down an absolute estate conveyed by one clause of a will.

APPEALS from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Carlton W. Greene, J. M. Kile, and A. H. Ashley, for Appellants.

Leo C. Lennon, Clary & Louttit, Nutter & Orr, and A. V. Scanlan, for Respondents.

MELVIN, J.—There are three appeals from parts of the decree of distribution in the matter of the estate of Inez A. Budd, deceased. One appeal from a portion of the decree is by the city of Stockton and the trustees of Stockton Free Public Library. The other two are by certain of the residuary legatees, from other parts of the decree. Mrs. Budd left no children, grandchildren, father, nor mother. Her only heir was a sister, Mrs. Clara A. Webster. The will contained several bequests which are not questioned. The residuary legatees and devisees named in the will entitled to share equally were Mrs. Budd's sister, Clara A. Webster, and the latter's children. Varee Tully, Olive I. Hulse, Luella Neill Dixon, and Homer Neill (sometimes called C. Homer Neill). Varee Tully and Olive I. Hulse take one appeal and a separate appeal is prosecuted by Clara A. Webster, and Homer Neill, but as both appeals present the same questions they will be considered together. Luella Neill Dixon is not an appellant.

We will first discuss that part of the decree from which the city of Stockton and the trustees of its public library appeal. The probate court held that the attempted gift of two thousand six hundred dollars to the public library of the city of Stockton was invalid. The language of the will by which the testatrix sought to create the legacy was as follows: "I will, bequeath and give to the Public Library of the said city of Stockton, county of San Joaquin, state of California, the sum of two thousand six hundred (2600) dollars."

The will of Mrs. Budd which was holographic was dated May 4, 1911. She died within thirty days thereafter. It was the contention of the respondents, which the court sustained, that the provisions of section 1313 of the Civil Code were applicable to this legacy and rendered it invalid. The pertinent part of that section is as follows: "No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator." It is admitted by all persons concerned that while there is a public library in the city of Stockton there is no corporation bearing that name. Appellants insist, however, that the will should be construed as providing a bequest to the city of Stockton. They also assert that the city of Stockton is not

a charitable or benevolent corporation, and that where the trustee and beneficiary are one and the same person the bequest is not one in trust.

Gifts to public libraries or for their behalf have always been construed as donations to charitable purposes. (See Page on Wills, sec. 646; 6 Cyc. 911 and cases cited.) Construing the will to mean that the city of Stockton should take the legacy for the benefit of the library we do not see how the provisions of section 1313 of the Civil Code are avoided. The city could not take the money and apply it to any purposes except those connected with the library. The bequest would therefore be one to the city in trust for a charitable use. A municipal corporation may take by will property, real or personal, and may be compelled in equity to administer it for a charity which comes within the scope of said corporation's duties. (*Estate of Robinson,* 63 Cal. 621.)

There is no merit in appellants' contention that the fund is not to be held in trust for any purpose because there is no direction for the expenditure of the income. There would be a trust residing in the governing body of the city of Stockton to expend the money for the benefit of the library, and whether the income or the *corpus* of the legacy were to be so used the duty of trusteeship would be equally sacred. In either case the gift would be to the city "in trust for charitable uses."

Therefore the probate court correctly held that the attempted bequest to the public library of the city of Stockton was void.

By the first two provisions of her will testatrix gives to her nephew, James Budd Dixon, a legacy of five thousand two hundred dollars to be used for his education and certain other personal property, including the library and other possessions formerly belonging to her husband, the late Governor James H. Budd. Then follows the attempted bequest to the public library which we have discussed. The will then provides that the money obtained from the sale of the diamonds of the testatrix shall be used for the publication of her "revised edition of the New Testament, Oxford's King James Version." Then come the following provisions:

"I will, bequeath and give to the incorporated association under my direction, and named 'Christ Doctrine Revealed and

CLXVI Cal.—19

Astronomical Science Association,' an undivided one-half of the net income from the following of my properties: the Budd flats situated on North San Joaquin Street, in the city of Stockton, county of San Joaquin, state of California; and the Budd vineyard on the Linden Road, about three miles east of Stockton in said county and state.

"I will, bequeath and give to the said corporation the use of the Budd homestead or residence and observatory situate at 1239 East Channel Street, Stockton, California, together with all the furnishings of the same including the telescope, pictures, my books, furniture, rugs, carpets, musical instruments, and all of the present furnishings therein, excepting those things otherwise bequeathed by the terms of this will.

"As to the other one-half of the income from the Budd flats and the Budd vineyard, I direct the same, after the payment of taxes, insurance and up-keep of the same, to be deposited in a bank in the city of Stockton to there remain until my nephew James Budd Dixon shall have arrived at the age of twenty-one years, and it shall then become and be his property.

"I will, bequeath and give the said first mentioned one-half of the income of said Budd flats and the Budd vineyard, less taxes, insurance, repairs and up-keep, to said corporation to carry out his objects and purposes and for the continued publication and binding of my works, Vols. I, II, III, IV, V, VI, VII, and the said works are to be given by said corporation without price unto the world.

"I will, bequeath and give to my said nephew, James Budd Dixon, the above named Budd flats and Budd vineyard and Budd residence to be distributed and delivered to him upon the following conditions:

"First: When he shall have attained the age of twenty-one years, and

"Second: When he shall have, after attaining the age of twenty-one years, executed in writing and acknowledged and filed with the county clerk of the county of San Joaquin, state of California, a written declaration to the effect that he will carry on and continue my life work, which is indicated by and fully set forth in the articles of incorporation and by-laws of the corporation, organized under my direction and named 'Christ Doctrine Revealed and Astronomical Science Associa-

tion,' it being expressly understood and agreed, and it is my will that should my nephew, James Budd Dixon, survive me and attain the age of twenty-one years and in writing consent to and declare that he will carry out the objects and purposes indicated in the articles of said corporation, then and in that event he shall take in fee simple the Budd flats and the Budd vineyard and the Budd residence; should my said nephew, James Budd Dixon, die before he attains the age of twenty-one, or having arrived at the age of twenty-one, fail to conform to the requirements of this will the said Budd flats and Budd vineyard and Budd residence shall then remain a part of my general estate and in such event I give, devise and bequeath all these three properties to the above named corporation, organized under my direction.''

The rest of the will deals with matters not subject to contest.

By its decree the court distributed to James Budd Dixon the real property known as the ''Budd flats,'' ''Budd residence'' and ''Budd vineyard,'' providing he attains the age of twenty-one years, but if he dies prior to reaching that age the property shall go to the residuary devisees and legatees. The rents, issues, and profits of the three pieces of real property are, under the terms of the decree, distributed to James Budd Dixon except that one-half of the income from the Budd flats and Budd vineyard shall be deposited by his guardian at interest in a bank named, the accumulation to be paid to said James Budd Dixon when he shall have reached the age of twenty-one years, and in the event of his death before he shall have attained such age the amount on deposit shall be distributed to the residuary legatees.

The bequest of the diamonds for the purpose of raising money for the publication of a version of the Bible was properly held by the court below to be void for uncertainty, on the authority of *Barker* v. *Hurley,* 132 Cal. 23, [63 Pac. 1071, 64 Pac. 480], and *Wittfield* v. *Forster,* 124 Cal. 418, [57 Pac. 219].

The court held all bequests to the ''Christ Doctrine Revealed and Astronomical Science Association'' void by reason of the death of Mrs. Budd within thirty days after the making of her will.

The court properly upheld that portion of the will giving
to James Budd Dixon one-half of the income from the flats
and the vineyard, and directing that the moneys so derived
should, after the payment of certain expenses of maintenance,
be deposited in bank there to remain until his arrival at the
age of twenty-one years. It is most earnestly asserted by
appellants that this part of the will is a bequest of a future
contingent interest and that it cannot, in any view of the
terms of that instrument, vest in James Budd Dixon until his
majority. It is further attacked upon the ground that it is
an unauthorized ''accumulation'' of assets, and upon the fur-
ther grounds that it is a suspension of the power of alienation
for a period not provided for by law, and that it is a creation
of a trust not permitted by law. We are compelled to con-
strue this bequest as a vested interest. While the language
of the will is in the future and provides that the fund shall
''become and be'' the property of the legatee upon his reach-
ing the age of twenty-one years, the intent of the testatrix is
easily and clearly deducible from the other provisions of her
will. The boy James Budd Dixon was the especial object of
her bounty. He was the namesake of her distinguished hus-
band, and to him she bequeathed those books and trinkets
which had for her a peculiar and sacred value because of their
daily use by Govenor Budd. She provided liberally for the
lad's education, and the whole will breathes an affection which
is manifested not only by her contemplated material benefac-
tions to him, but by her selection of him as one who should
carry on her religious and scientific work. That she intended
him to have one-half of the accumulated income from these
two pieces of real property delivered to him at his majority
there can be no doubt. She made no specific disposition nor
bequest over in the event of his death. She was not a lawyer
and we should not with too great nicety examine the tense of
her verbs. Rather should we look to her purpose and en-
deavor to construe the words of the will, if reasonably possible,
upon principles that admit of a compliance with that purpose.
(Civ. Code, sec. 1317; *Estate of Blake,* 157 Cal. 458, [108
Pac. 287] ; *Estate of Henderson,* 161 Cal. 357, [119 Pac. 496] ;
*Estate of Spreckels,* 162 Cal. 567, [119 Pac. 496].) In *Estate
of Haines,* 150 Cal. 643, [89 Pac. 606], the will contained no
words of present gift. A specific part of the income was to

be deposited to the credit of the minors "to be equally divided"
between them at a future time; yet this court held that there
was no obstacle to such an accumulation.    In the present case
we are aided by the presumption that "testamentary disposi-
tions, including devises and bequests to a person on attaining
majority, are presumed to vest at the testator's death."    (Civ.
Code, sec. 1341.)    Having this canon of interpretation be-
fore us and remembering also that this will was not the handi-
work of one skilled in the law, we do no violence to language in
construing the words "it shall then become and be his prop-
erty" as fixing the time of enjoyment rather than the time of
taking title.    The accumulation of income for the benefit of
a minor during minority is expressly permitted by law.    (Civ.
Code, sec. 724, subd. 1; *Estate of Haines,* 150 Cal. 643, [89
Pac. 606].)    Appellants cite *Estate of Steele,* 124 Cal. 541,
[57 Pac. 564], to the effect that the deposit of rents and is-
sues with no power in a trustee to reinvest such sums together
with the issues and profits thereof, is not "an accumulation of
the income" of said property as contemplated by the Civil
Code in section 724 et seq.    We do not so interpret that and
kindred cases.    It was there merely held that where the entire
net income is annually distributed there is no "accumulation"
in view of the statute, but neither that nor any other Cali-
fornian authority imports into the statute any such narrow,
technical definition of the word as that for which counsel con-
tends.    We decide, therefore, that the court was correct in
concluding that the bequest of one-half of the income from the
two pieces of property to James Budd Dixon was valid.    We
are urged by counsel for respondents to change the decree of
distribution to the effect that in the event of the death of
James Budd Dixon before his majority, the accumulated in-
come from the flats and the vineyard shall go to his "heirs
at law" and not to the residuary legatees, as the decree now
provides that it shall do; but as this part of the decree is not
attacked by them in any appeal we do not feel justified in ex-
amining their contention.    The mere fact that James Budd
Dixon is a minor would not justify us in making that change
without a cross-appeal by the said minor's guardian *ad litem.*

The bequest to the "Christ Doctrine Revealed and Astro-
nomical Science Association" of one-half of the income of the
flats and vineyard to be used in the publication and distribu-

tion of Mrs. Budd's books was void by reason of the inhibition contained in section 1313 of the Civil Code which has been discussed above, and the same reasoning and conclusion apply to the attempt to give the society the use of the Budd residence.

That portion of the will providing for the final disposition of the Budd flats and Budd vineyard presents the most serious questions brought to us by these appeals. It will be noticed that the devise contained in the first part of this subdivision is *in praesenti*, "I will, bequeath and give to my said nephew" the realty in question. This is followed by language perfectly consistent with a wish to vest the title in James Budd Dixon immediately upon the death of the testatrix, for she directs that the property be "distributed and delivered" to him upon the happening of the two events first, his reaching majority and second, the adoption by him of her life work as outlined by the articles of incorporation and by-laws of the "Christ Doctrine Revealed and Astronomical Science Association." It is conceded that we may not resort to the articles of incorporation and by-laws to determine her intent, for the reason that they were not in existence at the time of the execution of the will. The incorporation took place some days thereafter. The devise over must also fail by reason of that part of section 1313 of the Civil Code which we have been applying to the facts of this case. The difficulties arise when we attempt to gather the exact intent of Mrs. Budd. It is provided that should the devisee reach the age of twenty-one years and in writing consent to carry out the objects indicated in the articles of incorporation "then and in that event he shall take in fee simple" but that should he fail in that regard the property "shall then remain a part" of the estate, in which event (to quote the words of the will itself) "I give, devise and bequeath all these three properties to the above named corporation." This language is the basis of the contention made by appellants that the condition in this bequest is a condition precedent. It was the opinion of the learned judge who presided at the hearing of these matters in the superior court that if the devise were upon condition precedent it would be invalid; if upon condition subsequent it might be upheld in so far as it related to young Dixon. He decided that it rested upon a condition subsequent and with that view

we fully agree.   As we have seen, this subdivision of the will
begins with words of direct present devise and the first condi-
tion or proviso relating to the devisee's reaching a majority
contains words applicable not to the time for vesting title but
to the moment of enjoyment.   "I will, bequeath and give to
my nephew James Budd Dixon the above named Budd flats
and Budd vineyard and Budd residence" are emphatic words
of present devise.   The intention to make such a devise is in
no measure altered by the command that they be "distributed"
and "delivered" to him on his attaining the age of twenty-
one years.   If these two parts stood alone there could be no
difficulty in declaring without the possibility of question that
the purpose of the testatrix was to vest title in the minor at
the time of her death.   The law favors the vesting of estates.
Section 1322 of the Civil Code provides that "A clear and
distinct devise or bequest cannot be affected by any reasons
assigned therefor, or by any other words not equally clear and
distinct, or by inference or argument from other parts of the
will, or by an inaccurate recital of or reference to its contents
in another part of the will."   We may not therefore interpret
the will according to the contentions of appellants unless the
other language of the will clearly and cogently demand such
construction.   The direction that Dixon continue the life
work of Mrs. Budd was not a command that any charge be an-
nexed to the property or that he was required to expend any
money for the benefit of the religious corporation.   By pro-
visions which she doubtless regarded as valid she had made
considerable donations to that organization.   It is evident that
the main purpose of the part of the will which we are now con-
sidering was to furnish to the young man an income which
would adequately support him while he should be devoting his
life to the sort of studies and meditations which had been so
dear to hers.   True, unless he declared his purpose to buckle
on the armor of her doctrine there was the intention in her
mind that he should be divested of the realty, but she only
required a profession of faith—not the performance of works.
She was content to trust to his honor in the matter of perform-
ance and her wish was, we think, without doubt that the bulk
of her fortune should go to the support of a consecrated man,
rather than to the corporation which should receive such
benefit as might be derived from his study of religious and

scientific subjects. With such purpose in mind she would naturally use emphatic language of giving and she did employ that sort of phraseology. Words subsequently used, which merely raise a doubt or suggest an inference will not be construed as limiting or cutting down an absolute estate conveyed by one clause of a will. Upon this subject the authorities are agreed. (*Estate of Marti*, 132 Cal. 672, [61 Pac. 964, 64 Pac. 1071].) The words "then and in that event he shall take in fee simple" when construed in connection with the previous words of direct devise may well refer to the time when Dixon should come into complete possession of the Budd residence, which had been assigned by the terms of the will to the corporation's use, and of the other two pieces of real property which the testatrix had sought to burden for the benefit of "Christ Doctrine Revealed and Astronomical Science Association" during the period of Dixon's minority. The word "take" would probably mean to the nonprofessional mind the physical acquisition of property; therefore to "take in fee simple" would not to such a mind be incompatible with the previous ownership of *title* in fee simple. Nor are the earlier words of present devise withdrawn by the words, referring to the grandnephew of the testatrix—"or having arrived at the age of twenty-one years fails to conform to the requirements of this will the said Budd flats and Budd vineyard and Budd residence shall then remain a part of my general estate and in that event I give, devise and bequeath," etc. This expression is quite compatible with the theory that Mrs. Budd was seeking to frame a devise over to the corporation in the event of Dixon's death or his failure to conform to her wishes. These are words of present devise, but they follow expressions relating to future contingencies. The words "shall then remain," while if standing alone they might support an inference that the testatrix intended to dispose of an interest upon a condition precedent, must be construed in connection with the rest of the paragraph and also in view of the rules of interpretation which we have discussed above. These words appear in that part of the will dealing with those things which might divest the estate already bestowed by apt words. This fact alone renders them less significant than the words of direct devise at the opening of the section of the will now under analysis. And again we must remember

that the words of devise were employed by one unskilled in the law, and should not therefore be given the high technical value which otherwise might be theirs. (*Estate of Henderson*, 161 Cal. 358, [119 Pac. 496].)

Viewing the will as a whole we are assured that the intent of the testatrix to vest a present interest in James Budd Dixon appears, and that the conditions sought to be prescribed by her were to be performed after the vesting of the estate, and were therefore conditions subsequent. Respondents cite the very interesting case of *Smith* v. *Smith,* 64 Neb. 563, [90 N. W. 560], in which the holographic will was strikingly similar to the one before us. The testator used the words, "I hereby devise and bequeath" in connection with the bestowal of certain property upon his infant son. Part of the income was to be placed at interest for the boy and upon his reaching the age of twenty-one years he was to come into full possession of the fund and the lands. The conditions of the devise were that he should be christened and always known as Finley Smith "during his natural life." The court held these to be conditions subsequent.

As we have seen, the requirement that James Budd Dixon should declare his intention to take up the life work of Mrs. Budd was void, because there was no measure of duty in that regard furnished by the articles of incorporation or by-laws of any existing corporation. Such a condition subsequent does not have to be performed, owing to the impossibility of finding out what beliefs or obligations would be imposed upon the young man if he should file the declaration mentioned. The estate therefore vested without that condition, leaving only the one that he should receive distribution of the lands at his majority. It follows that the decree was correct in this regard.

It is earnestly argued that, because the bequests of the corporation of one-half of the income from the flats and vineyard and the use of the Budd residence are void, therefore the residuary legatees should succeed to these interests. Appellants cite in this behalf section 733 of the Civil Code, which provides as follows: "When, in consequence of a valid limitation of a future interest, there is a suspension of the power of alienation or of the ownership during the continuation of which the income is undisposed of, and no valid direction for its ac-

cumulation is given, such income belongs to the persons presumptively entitled to the next eventual interest." The obvious answer to their contention is that there is no "valid limitation of a future interest" suspending the ownership or power of alienation, because the estate vested immediately upon Mrs. Budd's death in the boy. These legacies being void, the income and use of the real property follow the fee. It cannot be that void charges upon the realty must be given validity in favor of the residuary legatees. These charges being void, the realty goes to James Budd Dixon freed of the burdens.

It follows that the judgment and decree, from which these appeals are taken, in all respects must be affirmed, and it is so ordered.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.