[Civ. No. 18244.   Second Dist., Div. Two.   June 12, 1951.]

SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Trustee, etc., Plaintiff and Respondent, v. ELBA W. REYNOLDS et al., Appellants; JOHN SETLEY KLEIS, JR., a Minor, et al., Defendants and Respondents.

Erb, French & Picone, Edward D. French, Brady & Nossaman and Walter L. Nossaman for Appellants.

Raymond A. Nelson, in pro. per., for Respondents.

MOORE, P. J.—Plaintiff sued the life tenants and remaindermen of a trust estate because of conflicting demands made with reference to certain income of the estate.   It asked (1) for instructions to the trustee and (2) for a construction of the declaration of trust and of the trustee's authority.

The trustor was Harriet L. Rice.   She had formerly placed

her estate in trust with plaintiff from which she was to receive in her lifetime *"the net income received from the trust estate and available for distribution."* That trust terminated in January, 1931. Under date of February 18, 1931, the present trust was created, the corpus of which was composed of the assets of the former trust and its accumulated income. By the terms of the Declaration of Trust, herein referred to as the declaration, trustor was privileged to withdraw at any time the "accumulated income" of the former trust. But on April 4, 1941, the declaration was so amended that "all accumulated income under paragraph XI of the Declaration in the sum of $25,000" which was income of the previous trust "shall henceforth be and become a part of the principal of the trust estate."

While the trustor might without let or hindrance have, in compliance with her declaration of trust, taken for her own use all the income from the trust estate\*, she did not do so. On July 29, 1942, without protest from her, the trustee budgeted the income and thereafter paid her only $500 monthly. As a consequence, at the time of her decease the excess of income received and accumulated by the trustee above her withdrawals aggregated $7,083.20 while $1,106.78 had accrued but had not yet been received by the trustee.

Following the demise of Mrs. Rice in February, 1948, her executor brought an action against the trustee to recover the collected excess income ($7,083.20). Relief was denied and as a part of its decision the court made the following finding: "That it was the intention of HARRIET L. RICE, the creator of said trust, that all of the net income which she was entitled to receive during her lifetime, but which had not been paid over to her at the time of her death, should be paid over pursuant to said trust agreement as follows: Income accrued and/or undistributed at the termination of any interest or estate hereunder, shall belong and go to the beneficiary or beneficiaries entitled to the next eventual estate in the same proportions as the principal thereof."

PERTINENT PROVISIONS OF THE DECLARATION OF TRUST

The latter sentence of the finding made in the executor's action is quoted from article IX of the declaration, and it was never modified.

Article III requires the trustee on the trustor's demise to make payments to the persons mentioned in article II and

---

\*The trust estate was conservatively worth $200,000.

then to distribute to them certain sums of money; but the trustee was not directed to pay them out of principal or income. However, the declaration as amended in April, 1941, required that the accumulated income which had been made a part of the trust estate become a part of the principal.

Article V provides that after payment has been made to the beneficiaries named in article III, the net income of the trust estate shall be distributed in installments to designated persons and it makes provision for such distribution to the successors in interest of those named and for the termination of the trust and for the ultimate distribution of the corpus to specified relatives of trustor. Appellants have priority over all other relatives named in the declaration and assert the right to receive all the income including that accrued and undistributed.

Under the declaration (art. VIII) the trustee was given all powers over the trust estate that might have been exercised by an absolute owner, including the power and discretion to invest accumulated income the same as though it were the corpus of the trust.

Article IX requires that all accrued or undistributed income upon the termination of the trust "shall belong and go to the beneficiary or beneficiaries entitled to the *next eventual estate* in the same proportions as the principal thereof."

### THE TRUSTOR'S INTENT

Appellants contend that (1) at no place in the declaration is there proof of trustor's purpose with respect to the accumulated income; (2) had she intended the accumulations to become principal she would have said so in the declaration; (3) as life tenants they are entitled to the next "eventual estate"; (4) since they do not take any portion of the principal, the "eventual estate" clause must be disregarded and the accumulated income be divided among them on the basis whereby they receive current income. On the other hand, respondent-remaindermen contend that the trustor clearly intended that income already accumulated at the date of the trustor's demise, as well as the income accrued but not collected, constitutes corpus of the trust and as such corpus it should at the termination of the trust be paid to themselves as article IX clearly indicates. That article directs the disposition of undistributed income and unless it is avoided by other provisions of the declaration such directive must prevail. Not only is there no such contravening clause

within the instrument but on reading it in its entirety and in the light of transpired events it is reasonably inferred that the trustor intended the income accumulated and accrued at her death to go to the remaindermen when the trust terminates. In the executor's action, *final judgment* determined that the "accumulated income" is not a part of Mrs. Rice's estate, but it is a part of the trust estate and must be distributed to the beneficiaries of the next eventual estate as the declaration provides. That is a final judgment.

There are means of divining the trustor's intention other than her written word. Not only did she deposit under the new declaration the accumulated income from the former trust in the sum of $25,000 but she amended the later instrument in 1942 by her acquiescence in the trustee's budgeting of the total income, advancing to her only $500 monthly and keeping the balance as "accumulated income." Such conduct on her part was tantamount (1) to a declaration that she desired only that a monthly allowance be made to her and (2) to her approbation of the trustee's retention of the unused portion of the net income. In fact, it could mean no less than that she had arranged for the budget in the ordinary course of business. (Code Civ. Proc., § 1963, subds. 19, 20.) And by the same token and the silence of the record to the contrary, the trustee conducted the trust fairly and regularly and according to the ordinary course of business. Moreover, the earnings of accumulated income were paid trustor as income on principal, i.e., she made no distinction between income from the original corpus and earnings from the cumulated income. Obviously for the purpose of giving an aura of sanctity to her silence, in 1941 she amended the declaration by making the past accumulations a part of the corpus of her trust and continued the practice of accepting only a part of the net earnings thereof, leaving the balance to build up the corpus. Such conduct negates the deduction urged by appellants, to wit, that she would have made provision for the future cumulations had she desired them to be part of the corpus of the trust. Intent that income shall be wholly or partially accumulated to become principal may be inferred not only from the language of the declaration but as well from the acts of the trustor during the continuance of her life estate. (See *Manning* v. *Bank of California,* 216 Cal. 629, 637 [15 P.2d 746]; *Estate of Budd,* 166 Cal. 286, 292 [135 P. 1131]; *Estate of Steele,* 124 Cal. 533, 541 [57 P. 564].)

If the trustor intended for the income amassed in her

lifetime to become part of the trust estate, then such intention must continue to prevail notwithstanding her death. Such intention having been inferred from the instrument and the acts of the trustor, it becomes a directive posthumously to deny to life tenants the accumulated income and to preserve it as corpus for the remaindermen. The declaration contains no provision for payment to appellants as life tenants of any sum other than the income accruing after the death of Mrs. Rice. Giving to every clause of the instrument the effect intended by its author as required by the rule in interpreting contracts (Civ. Code, § 1641) no other conclusion can be derived. The trustor's intention is manifested by her language in the declaration.

### "NEXT EVENTUAL ESTATE"

■ Appellants contend that the phrase "next eventual estate" quoted from article IX appears in section 733 of the Civil Code and has been applied to determine the destination of income undisposed of under the terms of the trust. They cite many decisions in support of that thesis, to wit, *Manice* v. *Manice*, 43 N.Y. 303, 385; *Pray* v. *Hegeman*, 92 N.Y. 508; *In re Saddington's Will*, 260 App.Div. 135 [21 N.Y.S.2d 80], etc. A close inspection of section 733* will show that it has no application. Before it could be invoked, article IX must be impotent and not susceptible of a practical interpretation. It relates to the income from a trust estate which accrued while the power to alienate the corpus is suspended by reason of "a valid limitation of a future interest." The amassed income of the trust estate here did not accrue by virtue of "a suspension of the power of alienation" in "consequence of a valid limitation of a future interest." It accumulated while the trustor was in being and had the right to use it at will. It cannot therefore be said that article IX of the declaration would constitute a foundation for an award of the accumulated income to appellants. In the case of *Manning* v. *Bank of Calif.*, 216 Cal. 629 [15 P.2d 746], a situation not wholly unlike the facts herein was under consideration. After observing the broad powers of the trustee to manage, invest and reinvest "any moneys or surplus or proceeds of sale,"

---

*Civil Code, section 733. "When, in consequence of a valid limitation of a future interest, there is a suspension of the power of alienation or of the ownership during the continuation of which the income is undisposed of, and no valid direction for its accumulation is given, such income belongs to the persons presumptively entitled to the next eventual interest."

the court commented that at the date of the will, seven years before the testator's death, he had four daughters whose normal life expectancy exceeded 20 years. He knew the income and expenses incident to the estate were uncertain and variable but of the income he clearly intended that each of his girls should receive not more than $300 a month during the life of the trust. "It is equally plain that he desired his entire estate not consumed in paying his daughters the specified income and discharging expenses of the trust administration ultimately to go to said four daughters . . . to the exclusion of other persons to whom he might have made legacies and bequests. The conclusion that the surplus income was to be accumulated and invested during the life of the trust is inescapable from the language used in creating the trust." Likewise, Mrs. Rice by using only $500 per month when she might have used more, and by empowering the trustee to "invest" income as though it had been corpus, could have intended not otherwise than that the accumulations of income should constitute part of the corpus of the trust.

Appellants argue fervently that the "last nine words" of article IX contemplate an element not present at this juncture in the life of the trust, namely, that *"the principal thereof* had to be going somewhere when the particular *interest or estate . . .* terminated." Now the language of article IX could by a reasonable construction mean nothing else than that the income accrued at the date of trustor's death shall belong and go to the remaindermen who are entitled to the *next eventual estate.* The italicized phrase involves no mystery. While the word "eventual" has many meanings, that which appears to be most appropriate to its setting as used in article IX is that which will result ultimately or which will take place in a particular contingency.* The "estate" means the corpus of the trust in the ownership of someone. The "next" estate refers to the status of such corpus when it

---

*Illustrations of this use given by the Oxford English Dictionary are as follows:

Lord Lyttleton: William aspired to secure to himself the *eventual* succession to the crown . . . in case that Louis . . . should die before his father.

Burke: Nothing is provided for it, but an *eventual* surplus to be divided. . . .

Green's Short History: He offered to admit England to a share in the *eventual* partition of the Spanish monarchy.

Jefferson: A bill authorizing the president in case of a declaration of war . . . to raise an *eventual* army of thirty regiments.

Buckle: As society advances, the *eventual* cessation of all such attempts is certain.

passes into the ownership of others. The word "eventual" emphasizes such meaning of "next," indicating that the trustor's thought was that the accrued income at the "termination of the trust hereunder shall belong and go to the beneficiaries" of the corpus which becomes in their hands the "eventual estate." Appellants as the life tenants could never by virtue of the declaration become owners of the estate, and the corpus cannot be an estate unless it is in the ownership of someone so that it has a status, a state, a permanent abode.

The trustor's plan and purpose evidently was to build up her estate for her eventual beneficiaries. To that end she designed as the method of accomplishing such purpose to transmit as an addition to the corpus of the trust such accrued profits of the trust as she might not have used in her lifetime.

The absence of an express stipulation in the instrument for the accumulation of income or for its being added to the trust estate does not hinder the interpretation that the declaration intended such behavior. Her purpose that such accumulated income should become principal is so clearly implied by her own acts as well as by the instrument itself that her meaning cannot be mistaken. Not a word indicates an intent that such cumulations may be paid to life tenants after trustor's death. If they are not to receive it, the only destination marked for it is the trust estate so that it may be finally divided among the remaindermen in the "same proportions" as the principal. By pursuing such course appellants will receive income on the "accumulated income" during their terms as beneficiaries and the remaindermen will receive it "eventually" as it was intended by the trustor.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.