## PEEBLES et al. v. BRIGGS et al.

### No. 2485.

Court of Civil Appeals of Texas. Eastland.

Dec. 22, 1944.

Rehearing Denied Jan. 19, 1945.

FUNDERBURK, Justice.

March 8, 1927, G. L. Browning, having no children or lineal descendants, but having two brothers and three sisters living and three sisters and one brother dead, with only one living descendant of any of the deceased brothers and sisters, made his holographic will, providing in part as follows: "In case of my death what property I possess is to be divided Equally between my Brothers & Sisters If they are living If not my nearest Relatives their children." On January 1, 1931, he added (holographically) a codicil to said will reading in part as follows: "I would like to will Buckners Orphan Home of Dallas $500.00 Also Orphan Home of Amarillo if my heirs can spare the money If they are in need I want them to have it." The testator died April 27, 1943, and the will was duly probated. After execution of the will and prior to the death of testator, two of his brothers and one of his sisters died. Of these, one brother, A. C. Browning, who died March 27, 1942, left no surviving child or lineal descendants; one brother, Dr. Walter M. Browning, who died February 5, 1943, left only one surviving child—Mary Peebles, who survived testator; the sister, Sue Browning Steele, died November 11, 1935, leaving five surviving children. Of these, four—Fay Dell Steele, Adrienne Steele Clark, Joe Steele and Mary Merkel Dickie —survived testator, but one daughter, Sue Beth Weakley, predeceased testator, having died November 11, 1942, leaving surviving her, and surviving testator, three children—Keith Weakley, Betty Joan Weakley and Barbara Jean Weakley. The only brothers or sisters who survived testator are Mrs. Duncan Browning Briggs, a widow, and M. P. Browning. Mrs. Duncan Browning Briggs is the duly qualified administratrix of testator's estate with the will annexed.

Mrs. Duncan Browning Briggs and M. P. Browning, claiming to be sole devisees and legatees under said will, brought this suit to have said will construed conformable to such claim, that is, that under said will plaintiffs take all of testator's property. The petition alleges that the "defendants are the children of a deceased brother and a deceased sister, and that the Plaintiffs and Defendants are the only and sole surviving heirs at law of the said G. L. Browning, deceased." The defendants thus described are also designated by name the same (ex-

Virgil T. Seaberry, of Eastland, E. T. Brooks, of Abilene, and Turner & Seaberry, of Eastland, for appellants.

Smith & Eplen, of Abilene, for appellees.

cepting plaintiffs) as the survivors set out in the foregoing part of the statement, such of them as are married women being sued jointly with their husbands.

Upon the trial, in response to a motion by plaintiffs, the case was withdrawn from the jury and judgment rendered for plaintiffs construing said will "to mean that said Plaintiffs, Duncan Browning Briggs, a widow, and M. P. Browning, as the only surviving sister and brother .of G. L. Browning, deceased, at the time of his death * * * are the sole beneficiaries under said will," etc. The defendants have appealed.

The wording of the will, in the handwriting of testator, would seem to rebut any otherwise possibly existing presumption that he knew any distinction between a testamentary gift to individuals and to a class; or any legal consequences of a testamentary gift being the one or the other. Under the circumstances it would not be unnatural to expect that the will expressed no intention to make gifts to individuals, rather than to a class or classes, or vice versa. The will should, therefore, be examined, we think, to find such expressions of intention, if any, as legally control the disposition of testator's property. In other words, it is more natural to find testator's intentions expressed with reference to result rather than the means of accomplishing the result.

■■ Let us first examine the language of the provision in question to see what is certainly expressed and what is necessarily implied. The words, "what property I possess," meant, of course, what property testator should possess at his death. It does not say so, but there can be no question about that. To have completely and expressly defined or described the property testator would have said, in case of my death what property I *then* possess is to be divided, etc. The words "Brothers & Sisters" meant the brothers and sisters living at the time the will was made. He may have had brothers and sisters who were then dead, but if so it is certain they were not included in the designation, "Brothers & Sisters." The "Brothers & Sisters" designated were brothers and sisters capable of surviving testator, and, of course, only brothers and sisters living at the time the will was made were capable of doing that.

■ There was no absolute devise or bequest to said "Brothers & Sisters." The language of testator necessarily implies that he gave nothing to any brother or sister who should die before testator. "In case of my death what property I possess is to be divided Equally between my Brothers & Sisters If they are living * * *." There would seem to be no room for any difference of opinion that this language means that if all of testator's brothers and sisters, living at the time the will was made, were still living at testator's death they would take all the property in equal proportions. But the words "If not" following the above language are ambiguous. Amplified, they would be expressed as follows: If said brothers and sisters are not living, etc. The amplification, of course, is likewise ambiguous. What meaning did testator intend to express by these two words, "If not?" It may be safely assumed, we think, that he meant one or the other of two things. He meant the same as if he had said (1) if *all* said brothers and sisters are not living; or (2) if *any* of said brothers and sisters is not living.

Now, for the purpose of further analysis let us make two restatements of the provision in question, in one substituting for the words "If not" one of said two possible meanings, and in the other, the other possible meaning. First Statement: In case of my death what property I possess is to be divided equally between my brothers and sisters if they are living. If all said brothers and sisters are not living my nearest relatives their children. Second Statement: In case of my death what property I possess is to be divided equally between my brothers and sisters if they are living. If any of said brothers and sisters are not living my nearest relatives their children.

■ Premising that whatever intention testator expressed, it is that expressed in one or the other of the above two statements, we next consider whether the will itself requires or favors the adoption of one statement to the rejection of the other as expressing the true intention. If one statement gives greater effect to such certain intention than the other, it should be adopted unless, of course, it runs counter to some other intention certainly expressed by the will. Which of the two statements gives greatest effect to such intention? Under the first of the two hypothetical statements, if a single brother or sister died before

testator, even though all others survived, none of the surviving brothers or sisters would take anything under the will; but everything would go to a child or children of the one deceased. On the other hand, if the second statement be assumed to be correct, if a single brother or sister died before testator all surviving brothers or sisters would take all that each would take if all survived, and only the children of the one deceased brother or sister would take the rest, in no event more than any surviving brother or sister would take. In our opinion, this conclusively settles the question of which of the two hypothetical statements truly expresses the intention of the testator. Stated simply, testator intended, as shown by the language of his will, that his property was to be divided into as many parts as he then had living brothers and sisters; that one such part should go to each brother and sister who survived him, and one such part to the child or children of each brother and sister who predeceased him.

■ The gift was not to testator's brothers and sisters as a class; at any rate, not to them as a class in any sense material in the interpretation of this will. In the first place, nothing was given to all of such brothers and sisters. Expressly the gifts to brothers and sisters were only to brothers and sisters who should be living at the death of testator. If it be granted that it is possible for a gift to be one to a class, although the class consists only of brothers and sisters who should be living at the time of testator's death, any question of survivorship would, of course, be confined to members of the class and would involve no question of survivorship as between such members of the class and deceased brothers and sisters who, by the very terms of the gifts, were excluded from the class.

Further, if the class was limited to brothers and sisters living at testator's death, there could be no possible operation of the doctrine of survivorship between them, because at the very instant that a brother or sister by surviving testator could be ascertained to be a member of the class, he or she at the same instant became also vested with the gift. There was no possibility of a death, or, so far as we can see, any other incapacity to take, intervening the determination of the class and the vesting of the gift. The principle of survivorship as characteristic of gifts to classes does not apply to gifts which have vested in the donees thereof.

It is apparent that our conclusions thus far have been reached from considering the provisions of the will alone, except, perhaps, the evidence that testator at the time of making the will had three brothers and two sisters then living.

■■ It remains to consider the gifts provided by the will to others than surviving brothers and sisters. Such gifts were upon the contingency that one or more brothers or sisters should not be living at the time of testator's death. Such contingent beneficiaries were designated by testator as "my nearest relatives their children." It is unnecessary to consider the ordinary import of the words "nearest relatives." If the contingent donees had not otherwise been clearly identified it would be necessary; but testator in effect defined "my nearest relatives." In effect he said that by "my nearest relatives," I mean the children of brothers and sisters who have died before my death. Since his surviving brothers and sisters are truly testator's "nearest relatives," the explanation of his use of the term as meaning "children" of deceased brothers and sisters may be that he meant his relatives nearest to his brothers and sisters. But whether so or not, we think, is unimportant. It is clear that testator meant "children" of deceased brothers and sisters. It is not so clear that he meant all children of all deceased brothers and sisters regarded as a single group or class, or whether he meant all the children of each deceased brother or sister regarded as so many several groups or classes. To refer to all the children of two or more deceased brothers and sisters as "their children" is, of course, not the choicest diction, but there is no uncertainty as to the meaning. It means the children of each deceased brother or sister as a separate group. If this were not otherwise clear, such would, nevertheless, be its proper construction in order to conform with the equal division of property certainly provided for in the will.

■■ We are unable to find in the will or in its application to its subject matter, any ambiguity or uncertainty in the word "children" as designating beneficiaries under the will. Corpus Juris, after stating that the word child or children "will be given its usual and technical meaning in the absence of something in the will construed

as a whole, in the light of the subject matter and the situation with which testator is dealing, disclosing a different intent," further said: "Thus, as a general rule 'child,' when used in a will in designating the beneficiaries means only the legitimate *immediate descendants of the first degree* and *does not include descendants of a remote degree.*" (Italics ours). 69 C.J. p. 171, § 1197. The reference in the codicil to the beneficiaries as "my heirs" does not render the meaning of the word "children" uncertain. Any surviving brother or sister and the children of any deceased brother or sister would in the absence of any will have been testator's heirs. The contingent devises and bequests to "children" of deceased brothers and sisters are good examples of gifts to classes. We are unable to find anything in the will which seems to us to render uncertain the expressed intention of testator to include in the designation "their children" any child or children born after the making of the will and who should be living at testator's death. Unlike in the case of the brothers and sisters of testator, there is no provision, expressed or implied, that in the case of the death of a child of a deceased brother or sister before the death of testator the interest was to go to anyone else.

 The contingent gift to each of the "children" seems to us to come clearly within the commonly accepted definition of a testamentary gift to a class. Page on Wills, § 918, quoting Jarman on Wills, says: "A gift to a class is a gift of 'an aggregate sum to a body of persons uncertain, in number at the time of the gift, to be ascertained at a future time, and who are able to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number.'"

 Without reading into the will an intention which if testator entertained it, was in no wise expressed, we cannot escape the conclusion that testator made his contingent gifts to the children of each deceased brother and sister with the legal result that they were gifts to classes. The result is that the gift, which, but for her death before testator, would have been to his sister, Sue Steele, vested in her four surviving daughters who survived testator, they succeeding to the interest of their sister, Sue Beth Weakley, which but for the latter's death before testator, would have vested in her. Testator's brother, A. C. Browning, who predeceased testator, having no child, the interest which he would have taken had he survived or his child or children would have taken, if he had had any, and who survived testator, did not pass to anyone by the will. As to one-fifth of his property testator in effect died intestate. The gift to testator's brother, Dr. Browning, if he had survived testator, vested in his daughter, Mary Peebles, the contingent donee. In other words, and repeating in part, as to one-fifth of his property, testator, in effect, died intestate. The other four-fifths vested as follows: In Mrs. Duncan Browning Briggs, one-fifth; in M. P. Browning, one-fifth; in Mary Peebles, one-fifth; in Fay Dell Steele, Adrienne Clark, Joe Steele and Mary Merkel Dickie, share and share alike, one-fifth.

The result of our conclusions is that the judgment of the court below should be reversed, that said will be construed as hereabove shown, and judgment be rendered as hereinbefore indicated, all of which is accordingly so ordered.