# DUNCAN BROWNING BRIGGS ET AL V. MARY BROWNING PEEBLES ET AL.

No. A-504. Decided May 9, 1945.
Rehearing overruled June 27, 1945.
(188 S. W., 2d Series, 147.)

*Smith & Eplen,* of Abilene, for petitioners.

The Court of Civil Appeals erred in not holding that it was testator's intention to give his property to his brothers and sisters as a class, if any of them were living at the time of his death, but if they were all dead, then to testator's nearest of kin, the children of said brothers and sisters. Dillard v. Dillard, 95 S. C. 86, 78 S. E. 1037; Jones v. Eastham, 36 S. W. (2d) 528; Watkins v. Blount, 94 S. W. 1116.

*E. T. Brooks,* of Abilene, and *Turner & Seaberry, Virgil T. Seaberry, of Eastland,* for respondents.

A bequest by a testator to his "brothers and sisters if they are living if not my nearest relative their children" was a contingent gift to the brothers and sisters conditioned upon the fact that they should be living at the time of the death, but if any of them should die before testator, then whatever portion would have gone to that brother or sister should pass to their children, if any. Peet v. Commerce & Ervay Street Ry. Co. 70 Texas 522, 8 S. W. 2, 3; Berry v. Cunningham, 99 S. W. (2d) 1016; Chaney's Estate, 120 Texas 185, 36 S. W. (2d) 709.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was brought by Mrs. Duncan Browning Briggs, a widow, and M. P. Browning against Mary Browning Peebles and others, to construe a holographic will of G. L. Browning that had been probated. They claimed that under the terms of the will they were entitled to all of the property left by testator at the time of his death. The trial court entered a judgment in favor of plaintiffs, and defendants appealed to the Court of Civil Appeals. That court reversed the judgment of the trial court. 184 S. W. (2d) 706.

The controlling facts are as follows: On March 8, 1927, G. L. Browning, a bachelor, having two brothers and three sisters living and three sisters and one brother dead, with only one living descendant of any of the deceased brothers and sisters, made his holographic will, the material part of which is here quoted:

"In case of my death what property I possess is to be divided Equally between my Brothers and Sisters If they are living If not my nearest Relatives their children."

On January 1, 1931, he added a holographic codicil to his will, reading in part as follows:

"I would like to will Buckners Orphan Home of Dallas $500.-00 Also Orphan Home of Amarillo if my heirs can spare the money If they are in need I want them to have it."

Testator died April 27, 1943, and the will was duly probated. After the execution of the will, and prior to testator's death, two of his brothers and one of his sisters died. His brother A. C. Browning died March 27, 1942, and left no surviving children. Another brother, Dr. Walter M. Browning, died February 5, 1943. He left only one surviving child, Mary Peebles, who survived testator. The sister, Sue Browning Steele, died November 11, 1935, leaving five surviving children. Four of these childres, Fay Dell Steele, Adrienne Steele Clark, Joe Steele, and May Merkele, survived testator, but one daughter, Sue Beth Weakley, predeceased testator, having died November 11, 1942, leaving surviving her and surviving testator her children, Keith Weakley, Betty Joan Weakley, and Barbara Jane Weakley.

Mrs. Duncan Browning Briggs and M. P. Browning are the only sister and brother who survived the testator. Mrs. Briggs is the duly qualified executrix of testator's estate with the will annexed. Mrs. Briggs and M. P. Browning claim to be the sole devisees and legatees under the will, and that they are entitled to take all of the property left by testator, and they brought this suit to have the will so construed. The plaintiffs and defendants to this suit are the same persons described as the survivors set out in the above statement.

The trial court held that the surviving brother and sister were the sole beneficiaries under said will. The Court of Civil Appeals held that testator meant by his will: First, that his estate should be divided into as many parts as he had brothers and sisters living at the date of said will (which were five) ; second, that one such part should go to each surviving brother and sister; third, that the part that would have gone to the brother and sister who predeceased testator and left children, passed according to the law of descent and distribution; and fourth, that the part that would have gone to the brother who predeceased testator without issue should be treated as if the testator had died intestate, and should be inherited accordingly.

Testator was an uneducated man. He was a shrewd business man, and amassed a large estate. The record shows that he was proud of his family history and that he was fond of his brothers and sisters and their children. He lived to a ripe old age.

Petitioners contend that the meaning of the portion of the will quoted above is better expressed in the following language, as conveying the intention of the testator:

"In case of my death what property I possess is to be divided Equally between my Brothers & Sisters if at my death my brothers and sisters are living; if at my death none of my brothers and sisters are living, then to my nearest relatives, the children of my brothers and sisters."

Respondents contend that the meaning of that portion of the will of testator would be clear if he had used the following language:

"In case of my death what property I possess is to be divided equally between my brothers and sisters if living. If *any* brother or sister shall not be living his or her part shall go to their children."

■ The precise question presented here for decision is, To whom did testator intend to give his property? If testator's intention can be ascertained from the will itself, such intention must be given effect. From the informal language used by testator it is quite obvious that he did not have legal advice in drawing his will. In making a will certain formalities are not essential as required in executing a deed. More latitude is permitted courts in the construction of a will to ascertain the testator's intention than in the construction of a deed. Calvery v. Calvery, 122 Texas 204, 55 S. W. (2d) 527; Lambert's Lessee v. Paine, 3 Cranch 97, 138, 2 L. Ed., 377, 391; 4 Kent Com., 216; Andrews v. Spurlin, 35 Ind. 262; Williams, Real Property (5th ed.), 212 Brockschmidt v. Archer, 64 Ohio St., 502, 60 N. E. 623. For an exhaustive annotation of authorities on this point, see 29 L. R. A. (N. S.), 1038.

Now let us consider what the testator had in mind when he made the will under consideration. He evidently knew best how he wanted his property divided. When we consider all the facts and circumstances in connection with the making of this will, and the language used therein, it is quite plain that the testator did not intend that his property should be given to his brothers and sisters as a class.

■ The record shows that testator was on friendly terms with all of his brothers and sisters living at the time he made his will, and that their number was certain, there being five of

them. The words "Brothers & Sisters" meant the brothers and sisters living at the time he made the will. All seem to agree that this language means that if the brothers and sisters of testator living at the time the will was executed were living at the time of testator's death, all the property left by him would be equally divided among them. There was no uncertainty about the number of his brothers and sisters living at the time he made the will. His mother and father were both dead, and it was impossible for him to have more than five brothers and sisters. When the language used in the will is construed in connection with all the facts and circumstances surrounding the making of such will, we think the testator intended to give to his brothers and sisters then living all of his property, to be equally divided among them. If at the time of his death any of his brothers and sisters had died since he made the will, in that event their children, if any, should receive the share given under the will to their mother or father, as the case might be. The dominant factor running through all the rules announced or discussed relating to this question is that the intent of the testator, as derived from the language used in the entire instrument, considered in connection with the relation and situation of the parties, will control. For a full discussion of this subject reference is made to the following authorities: 44 Tex. Jur., p. 802 sec. 235, and cases cited in footnotes; Estate of Margaret King, 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Anno. Cases 412; Shannon v. Eno, 120 Conn. 77, 179 Atl. 479; Crozier's Estate, 257 Pa. 241, 101 Atl. 801; 1 Redfield on Wills (2d Ed.), p. 340; 2 Page on Wills (2d Ed.), p. 1531, sec. 918; Thompson on Construction of Wills, p. 330, sec. 200; 69 C. J., p. 231, sec. 1262; Hagood v. Hagood, 186 S. W. 220, 187 S. W. 228 (error refused); Burch v. McMillin, 15 S. W. (2d) 86; Thompson on Construction of Wills, p. 331, sec. 200; Perry v. Leslie, 124, Me. 93, 126 Atl. 340; McMullen v. Block, 168 S. W. (2d) 667; see note in 75 A. L. R., p. 773, for an annotation of the decisions on this subject. In 75 A. L. R., p. 780, the following rule is stated:

"The only universal rule for determining whether testamentary gifts to several persons are gifts to them as a class or as individuals is to ascertain the intention of the testator. As aids to that end, the general scope of the will, the general purpose of the testator, the particular language used, the relationship of the parties, and the surrounding circumstances may all be considered." See also annotation of cases in 105 A. L. R., p. 1394.

In Burch v. McMillin, 15 S. W. (2d) 86, 91, Chief Justice

Hickman, speaking for the Court of Civil Appeals, stated the very heart of the rule in the following terse statement:

"One of the essential requisites of a gift to a class is that the gift must be to a body of persons 'uncertain in number at the time of the gift.' Page on Wills (2d Ed.) vol. 2, sec. 918, and the many authorities there cited."

The Court of Civil Appeals construed the will to mean in regard to A. C. Browning, who predeceased testator, having no child, 'that the interest which he would have received had he survived, or a child or children of his would have received, if he had had any, and who survived testator, did not pass to anyone under this will. In other words, as to one-fifth of his property testator in effect died intestate. The other four-fifths vested as follows: In Mrs. Duncan Browning Briggs, one-fifth; in M. P. Browning, one-fifth; in Mary Peebles, one-fifth; in Fay Dell Steele, Adrienne Clark, Joe Steele and Mary Merkel Dickie, share and share alike, one-fifth.

We find nothing in the acts of the testator or in the language of the will that would lead to the conclusion that testator did not intend to dispose of his entire estate. We disagree with the holding of the Court of Civil Appeals that testator died intestate as to one-fifth of his property, and hold that he died testate as to his entire estate.

■ The rule obtains in this State that where a person makes a will the general presumption prevails that the testator intended to dispose of all of his property, and there is no presumption that the testator intended to die intestate as to part of his estate if the words used in the will may carry the whole of his property. 44 Tex. Jur., p. 707, sec. 148; Ferguson v. Ferguson, 121 Texas 119, 45 S. W. (2d) 1096, 79 A. L. R. 1163; Frame v. Whitaker, 120 Texas 53, 36 S. W. (2d) 149; Bittner v. Bittner (Com. App.), 45 S. W. (2d) 148.

The remaining question for decision is, Who is entitled to that part of testator's estate left to his brother A. C. Browning, who died after the execution of the will and prior to the death of testator, leaving no surviving children?

The language of the will must be given a fair, practical and reasonable interpretation. 44 Tex. Jr., p. 701, sec. 143. Testator provided in his will that his estate should be equally divided between his brothers and sisters, if they were living, and if not

then between his "nearest Relatives their children." When this particular language of his will is construed in connection with the rules relating to the construction of wills, it is clear that testator in the use of the words "their children" did not include the grandchildren of his deceased brothers and sisters. 44 Tex. Jur., p. 798, sec. 230; Bartlett v. Terrell (Civ. App.), 292 S. W. 273 (writ refused).

The Court of Civil Appeals correctly held that four-fifths of the estate vested as follows: in Mrs. Duncan Browning Briggs, one-fifth; in M. P. Browning, one-fifth; in Mary Peebles, one-fifth; in Fay Dell Steele, Adrienne Clark, Joe Steele and Mary Merkel Dickey, share and share alike, one-fifth. We also hold that, in addition to the four-fifths of the estate vested as above described, the one-fifth of the estate left to A. C. Browning, who died without leaving a child, shall be divided as follows: to Mrs. Duncan Browning Briggs, one-fourth; to M. P. Browning, one-fourth; to Mary Peebles, surviving daughter of Dr. Walter M. Browning, deceased, one-fourth; and to Fay Dell Steele, Adrienne Clark, Joe Steele, and Mary Merkel Dickey, surviving children of Mrs. Browning Steele, the deceased sister of testator, share and share alike, one-fourth.

The judgments of both the trial court and Court of Civil Appeals are hereby reversed, and this cause is remanded to the trial court with instructions to enter judgment in accordance with this opinion.

Opinion delivered May 9, 1945.

Rehearing overruled June 27, 1945.