Carie E. **WELCH** et al., Appellants,

v.

Eugene **STRAACH** et al., Appellees.

No. 5388.

Court of Civil Appeals of Texas, Waco.

Jan. 23, 1975.

Rehearing Denied Feb. 20, 1975.

Spaford, Gay & Whitham, James C. McCoy, Dallas, for appellants.

Passman, Jones, Andrews, Coplin, Holley & Co., Richard E. Young, Dallas, for appellees.

OPINION

JAMES, Justice.

In this case we are called upon to construe a holographic will. Plaintiff-Appellants contend that the devise in question to Mrs. Effie Mae Welch, the testator's widow, was a life estate determinable in the event of her remarriage; whereas Defendant-Appellees contend said devise was a fee simple estate determinable in the event of her remarriage. We hold that such devise created a fee simple estate determinable in the event of her remarriage, and thereby affirm the judgment of the trial court.

The testator, James Madison Welch, was married twice. Plaintiff-Appellants are all children of the first marriage, and their names are Carie E. Welch, Lloyd M. Welch, James Marion Welch, Mary Sue Dempsey, Mildred Allen Foster, Verna Love Rutledge, and Eunice Elizabeth Low. Testator's first wife died in 1936, and on March 20, 1940, testator married for the second and final time, that being to Effie Mae Welch. Testator and Effie Mae Welch had no children.

Testator and his second wife Effie Mae Welch had two homesteads during their marriage. The first homestead, located on Marvin Street in Dallas, Texas, was owned from March 1940 until December 1949. The parties sold the Marvin Street home in December 1949 and purchased another place on Buckner Boulevard in Dallas, Texas, in which last-mentioned place they made their home until testator James Madison Welch's death in November 1951. Effie Mae Welch continued to make the Buckner Boulevard place her home until October 27, 1970, at which time she conveyed said place by general warranty deed to Defendant-Appellee Eugene Straach. Effie Mae Welch has never remarried since testator's death.

On September 18, 1945, the testator executed a holographic will. At some time or times not shown by the record, but subsequent to making his will, the testator executed two holographic codicils which were respectively designated, "Supplement to Section 2" and "Supplement to Section 3." As stated, the testator James Madison Welch died November 19, 1951, and his will and two codicils were admitted to probate on December 18, 1951.

The pertinent portions of testator's will (including the codicils) which bear upon the controversy now before us read as follows:

"2. After the payment of my just debts, funeral expenses and expenses of my last sickness, I will, give and bequeath unto my beloved wife, Mrs. Effie M. Welch, the homestead upon which we are living, together with all household and kitchen furniture, the family automobile, and such personal properties not otherwise specifically designated in this will, that may be then·situated on said homestead.

"3. I will, give, devise and bequeath unto my beloved children, Mary Sue, Verna Love, James M. Jr., Mildred Allen, Lloyd M., Elizabeth E., and Carie E. Welch, the residue of my property, both real, personal and mixed of whatsoever nature wheresoever situated and howsoever acquired, with the exception of my gold and diamond set Police Badge, which shall go to my youngest son Carie E. Welch after death or remarriage of wife Effie M. Welch. All properties shall be equally divided among above named children or their heirs.

"Supplement to Sec. #2.

"This homestead shall remain in her possession as long as she live and remains a widow, but upon marriage to another man, such homestead shall revert to the children or their heirs as named in this will. ~~Also~~

the ~~automobile shall revert to the heirs in case of death or marriage.~~" (The testator had deleted this last sentence from the codicil).

"Supplement to Sec. #3.

"All war saving bonds shall be sold and proceed(s) equally divided among my wife Effie M. Welch and the seven children or their heirs after note against home is paid. All money or stock if there should be such shall be equally divided as above stated."

As stated, after testator's death in 1951, the widow Effie Mae Welch continued to reside in the Buckner Boulevard homestead until October 27, 1970, on which last-named date she conveyed the Buckner Boulevard property by general warranty deed to Defendant-Appellee Eugene Straach.

Plaintiff-Appellants, the testator's children by his first marriage, filed suit against Defendant-Appellee Straach and his tenants, asserted the homestead to have been the community property of James Madison Welch and Effie Mae Welch, and prayed for removal of cloud from their title to their undivided one-half interest in the property, and for partition. Plaintiff-Appellants asserted that Effie Mae Welch had been devised only a defeasible life estate in their father's undivided one-half of the homestead, and that they (as the testator's children) were vested with the remainder in and to their father's undivided one-half interest therein.

The parties filed an agreed statement of facts concerning all of the controversy except the issue of damages to which Plaintiffs may have been entitled in the event they were successful in this litigation.

Pursuant to this agreed statement of facts, the trial court entered judgment that Plaintiff-Appellants take nothing, from which judgment Plaintiff-Appellants prosecute this appeal.

Appellants' points one through five complain of the trial court's implicit holding in

its judgment that the testator's widow received under the will a fee simple determinable in the event of her remarriage. Appellants assert that the language of the will hereinabove quoted shows that the testator intended to leave his wife a determinable life estate in the testator's undivided one-half interest in the property. We overrule this contention, and hold that testator devised to his widow a fee simple estate determinable in the event of her remarriage, and affirm the trial court's judgment.

In arriving at a proper construction of this will, we are obliged to follow Article 1291, Vernon's Annotated Texas Civil Statutes, as well as some well-settled rules of construction.

■ Article 1291 provides: "Every estate in lands which shall thereafter (hereafter) be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, *if a less estate be not limited by express words* or do not appear to have been granted, conveyed or devised by construction or operation of law." (emphasis supplied). This statute reverses the common law rule and favors a construction which gives a fee to the first taker. Rogers v. Nixon (San Antonio CA 1955) 275 S.W.2d 197, writ refused.

■ In construing wills, the intention of the testator must be ascertained if possible, and if it is not in contravention of some established rule of law or public policy, must be given effect. Frame v. Whitaker (Comm.App.1931) 120 Tex. 53, 36 S.W.2d 149, opinion adopted by the Supreme Court; Briggs v. Peebles (Tex.Sup.Ct. 1945) 144 Tex. 47, 188 S.W.2d 147.

■ Where a will contains a provision that upon a certain contingency an estate given to one shall pass to others, as in the case at bar, the law favors the first taker, and the testator's language shall be construed so as to grant such first taker the

greatest estate which, by fair construction, it is capable of passing. Darragh v. Barmore (Comm.App.1922) 242 S.W. 714, judgment rendered by Supreme Court construing will as recommended by the Commission of Appeals.

■ If it does not clearly appear from the language of the will that a less estate was intended to be created, the devise will be deemed to be in fee simple. Pritchett v. Badgett (El Paso CA 1953) 257 S.W.2d 776, writ refused.

■ A devise of lands should be construed to convey the entire estate of the testator as far as he can lawfully dispose of the same, unless it clearly appears from the will that the testator meant to dispose of a smaller interest. Rogers v. Nixon, (San Antonio CA 1955) 275 S.W.2d 197, writ refused.

■ The rule that every part of a will must be given effect, if possible, is subordinate to the rule that a devise shall be deemed a fee simple, unless limited by express words. Winfree v. Winfree (Galveston CA 1911) Tex.Civ.App., 139 S.W. 36, writ refused; Pythian Home for Orphans v. Barrow (Amarillo CA 1961), Tex.Civ. App., 346 S.W.2d 426, error refused NRE.

■ Where a person makes a will the presumption prevails that the testator intended to dispose of all of his property, and there is no presumption that the testator intended to die intestate if the words in his will may carry the whole of his property. Briggs v. Peebles (1945) 144 Tex. 47, 188 S.W.2d 147.

■ Where the first clause in a will in clear, unambiguous language gives and bequeaths to one devisee the property in question, such estate so given cannot be disturbed, cut down or diminished by a subsequent clause which is uncertain and ambiguous in its meaning. Gilliam v. Mahon (Comm.App.1921) 231 S.W. 712, judgment adopted by the Supreme Court. In other words, when an estate is given in one part of a will in clear and decisive terms, such estate cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate. McMurray v. Stanley (Tex.Sup.Ct.1887) 69 Tex. 227, 6 S.W. 412. Where there is an ambiguity as to a limitation attempted or doubt as to its application, the larger estate will vest. Frame v. Whitaker (Comm.App.1931) 120 Tex. 53, 36 S.W.2d 149, opinion adopted by the Supreme Court.

■ An express bequest or devise cannot be cut down by a subsequent clause of doubtful meaning, and an estate granted in plain and unequivocal language in one clause of a will therefore cannot be lessened or cut down by a subsequent clause, unless the language therein is as clear, plain and unequivocal as that in the first grant. Winston v. Griffith (Fort Worth CA 1937) Tex.Civ.App., 108 S.W.2d 745, affirmed 133 Tex. 348, 128 S.W.2d 25. Also see Roberts v. Drake (Dallas CA 1964) 380 S.W.2d 657, error refused NRE.

■ Let us now examine the will in question in the light of Article 1291 and the above rules of construction.

The "first taker" in testator's will is Effie Mae Welch. Testator says in section 2: " ____ I will, give and bequeath unto my beloved wife, Mrs. Effie M. Welch, the homestead ____." This devise standing alone unquestionably gave her a fee simple estate in the homestead.

Then in section 3 the testator leaves to his seven children of his first marriage the residue of his property, other than that given to his widow, Effie M. Welch.

Then at some time subsequent to the making of his original will, he prepared his

"Supplement to Section 2", in which he placed a limitation on his original devise of the homestead, in which he said: "This homestead shall remain in her possession as long as she live and remains a widow, but upon marriage to another man, such homestead shall revert to the children or their heirs as named in this will." Our task is to evaluate these words of limitation. His words are clear and plain that if she should marry again, that the fee simple title he had previously given her in section 2 (of the original will) would terminate and the property would revert to his children.

Appellants contend that by testator's use of the words "as long as she *live* and remains a widow" means that he limited her to a life estate which may be sooner terminated by remarriage. We do not agree with this contention. We believe these words "live and remains" a widow should be taken in context together, and that the testator's intention was the same as if he had used the words "as long as she lives a widow and remains a widow."

Even if we should not construe the above-quoted words of limitation as we have done, to say the least the wording aimed at a life estate is uncertain and ambiguous, and in this event we are required by the above rules of construction to hold that they do not "cut down" the fee simple devised to the widow originally in section 2 of the will. It certainly does not "clearly appear" in "express words" that the testator cut down the widow's estate to a life estate; in fact, we do not believe he intended this at all.

As hereinbefore noted, in his "Supplement to Sec. 2", the testator had written: "Also the automobile shall revert to the heirs in case of death or marriage". Then it is undisputed that he had deleted this language from the supplement. This shows that the testator was quite capable of stating the condition of death as well as remarriage if he intended to do so, because he did state both conditions for reverter of the automobile, and then deleted it. This indicates to us that if he had intended to make his widow's death a condition for reverter of the homestead that he would have said so in so many words.

For all the above reasons, we hold that the widow Effie Mae Welch was devised a fee simple estate determinable in the event of her remarriage. Appellant's points one through five are accordingly overruled.

Appellant's sixth and final point asserts "the trial court erred in not finding that an ademption occurred to the homestead property interest of the testator, and that such interest passed under the residuary clause of the will to the Appellants." That is to say, Appellants claim that the gift of the testator to his widow of the homestead was adeemed because the "homestead" that he owned at the time of execution of the will was sold prior to his death and another had taken its place. We overrule this contention.

 The term "ademption" is used to describe the act by which a specific legacy becomes inoperative because of the disappearance of its subject matter from the testator's estate in his lifetime. The general rule is that a specific legacy is adeemed if the thing given is disposed of by the testator during his lifetime. It is clear that the doctrine of ademption applies only to specific legacies. Rogers v. Carter (San Antonio CA 1964) Tex.Civ.App., 385 S.W.2d 563, error refused NRE. A specific legacy is a bequest of a specific article of the testator's estate, distinguished from all others of the same kind. To ascertain if a devise is general, specific or demonstrative, we go to the terms and conditions of the will in order to ascertain the intention of the testator in creating the devise. Houston Land and Trust Co. v. Campbell (El Paso CA 1937) Tex.Civ.App., 105 S. W.2d 430, writ refused.

**868**

In the case at bar it is clear from the wording of the will that testator's devise of the "homestead" was intended to be whatever homestead he had at the time of his death.

At the time he made the will (1945), he and his wife owned the Marvin Street homestead. In 1949, they sold the Marvin Street homestead and purchased the Buckner Boulevard property in which they resided at the time of testator's death in 1951.

The will provides: "....I will, give, and bequeath unto my beloved wife, Mrs. Effie M. Welch, the homestead *upon which we are living,* together with all (personal property) that may be *then* situated on said homestead." (emphasis supplied). The testator did not single out or specify any particular homestead, and omitted any reference to the Marvin Street homestead in his will. When he used the words, "the homestead upon which we are living" he was using the progressive tense of the verb, especially since he later in the same sentence devised to his wife personal property "that may be *then* situated on said homestead." What time does he mean by "then"? He could only mean at the time of his death. If he meant the Marvin Street homestead when he left the "homestead" to his wife, this would mean he was leaving her only the personalty that he would own that would be located on the Marvin Street property at the time of his death. If the Marvin Street homestead had been sold before his death (as it was), the likelihood that he would have any personal property situated on a homestead belonging to a stranger is remote. To say the testator intended a specific devise of the Marvin Street homestead by the language he used is, in our opinion, an unreasonable construction of the will. Appellants' sixth point is overruled.

Judgment of the trial court is affirmed.

Affirmed.