

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00499-CV

**ESTATE OF** Jose Alfredo **MENDOZA**, Deceased

From the County Court at Law, Starr County, Texas
Trial Court No. PR-16-041
Honorable Orlando Rodriguez, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:    Lori I. Valenzuela, Justice
Lori M. Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: December 23, 2025

AFFIRMED AS MODIFIED

Appellants appeal the trial court's determination that two of decedent's grandchildren are beneficiaries under decedent's will and related rulings incident to this judgment. We affirm as modified.

## BACKGROUND

As this is a memorandum opinion and the parties are familiar with the facts of the case, we will not recite them here except as necessary to advise the parties of this court's decision and the

basic reasons for it.[1] *See* TEX. R. APP. P. 47.4. Jose Alfredo Mendoza executed his original will on August 7, 2012. He subsequently executed codicils on April 24, 2013 (the "First Codicil"), December 3, 2013 (the "Second Codicil), and September 25, 2014 (the "Third Codicil").[2] On June 14, 2014, between the execution of the Second and Third Codicils, Eduardo Jose Mendoza died, predeceasing his father Jose. Eduardo was survived by two children, Michelle Iris Mendoza and Eduardo Jose Mendoza, Jr. (referred to herein as "Eduardo's Children"), who are the appellees in this appeal. Jose died on September 2, 2016, and was survived by his three remaining children, Melinda Iris M. Gonzalez, Maria Mirtha M. Lozano, and Cynthia Emilia M. Garcia (referred to herein as the "Daughters"), who are the appellants in this appeal.

The Third Codicil, executed three-and-a-half months after Eduardo's death, reassigned specific gifts originally made to Eduardo to the Daughters (individually and/or as a group). But it expressly stated that "EXCEPT as herein amended, I confirm and republish my Will dated August 7, 2012, First Codicil dated April 24, 2013, and Second Codicil dated December 3, 2013." The republished and unchanged portions of the will include language in article I identifying Eduardo as one of Jose's four children, and language in Articles III(A), III(C), and article V relating to the creation of a ten-year, testamentary trust and the disbursement of the estate's residual assets upon the termination of that trust.

---

[1] This is the third appeal attempting to resolve this will construction dispute by summary judgment. In *In re Estate of Mendoza*, No. 04-18-00390-CV, 6963, at *3, 2018 WL 4096380 (Tex. App.—San Antonio Aug. 28, 2018, no pet.) (mem. op.) (*Mendoza I*), Eduardo's Children appealed a summary judgment that they receive nothing under their grandfather's will. This court dismissed the appeal for lack of jurisdiction because no final, appealable judgment has been entered in this phase of the probate proceeding. *Id*., at *1. Once a final judgment was entered, Eduardo's Children filed a second appeal. *See In re Estate of Mendoza*, No. 04-19-00129-CV, 2020 WL 1037887 (Tex. App.—San Antonio Mar. 4, 2020, no pet.) (mem. op.) (*Mendoza II*). In *Mendoza II*, this Court reversed the trial court's summary judgment, holding "the trial court erred in granting summary judgment in favor of the Daughters based on the mere fact that Eduardo predeceased Jose because that fact alone did not establish Eduardo's beneficial interest lapsed as a matter of law." *Id*., at *3

[2] The First Codicil amended Article III, paragraph B(1)(e) of the will to remove Eduardo from what was a three-way split of "Parcel 5" with his sisters (Maria Mirtha M. Lozano and Melinda Iris M. Gonzalez) to a two-way split between those two sisters. The Second Codicil added a paragraph that was later replaced under the Third Codicil. Neither codicil is relevant to the matter before us.

After two prior appeals, the parties filed competing motions for partial summary judgment seeking a determination of beneficiaries of these residual assets under the will and codicils. As in *Mendoza II*, the parties agreed that Article V, rather than Article III controlled the creation of the testamentary trust.[3] The trial court denied the Daughters' motion and granted Eduardo's Children's motion—holding that Eduardo's Children are beneficiaries under the testamentary trust created under Article V.

In response, the Daughters filed a motion to reconsider that ruling together with a new motion for partial summary judgment based on the alternative position that Article III, rather than Article V, controlled the creation of the trust. The trial court denied both of these motions.

### Standard of Review

"We review a declaratory judgment under the same standards as other judgments and decrees." *Ochse v. Ochse*, No. 04-20-00035-CV, 2020 WL 6749044, at *3 (Tex. App.—San Antonio Nov. 18, 2020, pet. denied) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE § 37.010. "A trial court's order granting summary judgment is reviewed de novo." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). "A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id*. (citing TEX. R. CIV. P. 166a(c)). This same standard applies even when we are faced with competing motions for summary judgment on a declaratory judgment action. *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 565 (Tex. App.—San Antonio 2014, pet. denied) (citations omitted). Here, the parties filed

---

[3] In *Mendoza II*, the parties agreed that the trusts created under Article III and Article V had different, mutually exclusive preconditions—the trust under Article III was created if "all" of Jose's children survived him, while the trust under Article V was created if "any" of his children survived him—and agreed that Article V applied since Eduardo predeceased Jose. *See Mendoza II*, 2020 WL 1037887 at *1. Accordingly, this court did not address Article III in that opinion though it recognized that "a testamentary trust . . . [was] created under article V of Jose's will." *Id.*, at *3.

competing summary judgment motions based on a question of law. *See In re Estate of Rogers*, No. 04-06-00555-CV, 2007 WL 1258763, at *2 (Tex. App.—San Antonio May 2, 2007, pet. denied) (mem. op.) ("Absent ambiguity, the construction of a will is a matter of law.").

"When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, *and render the judgment the trial court should have rendered.*" *Skelton v. Gray*, No. 04-24-00600-CV, 2025 WL 2331546, at *7 (Tex. App.—San Antonio Aug. 13, 2025, no pet.) (mem. op.) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)) (emphasis added); *see also Thompson v. Landry*, 713 S.W.3d 372, 376 (Tex. 2025) (same). "When, as here, the trial court's summary-judgment order specifies the ground or grounds upon which summary judgment was granted, we must review those grounds that the trial court ruled on[.]" *Liska v. Dworaczyk*, No. 04-22-00170-CV, 2024 WL 251963, at *3 (Tex. App.—San Antonio Jan. 24, 2024, no pet.) (mem. op.) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996)). "To the extent that the trial court did not explicitly rule on this ground, we may nonetheless consider it as necessary for final disposition of this appeal and in the interest of judicial economy." *Geary v. Two Bow Ranch Ltd. P'ship*, No. 04-18-00610-CV, 2020 WL 354763, at *9 (Tex. App.—San Antonio Jan. 22, 2020, pet. denied) (mem. op.) (citing *Cates*, 927 S.W.2d at 226)).

### *Legal Standard*

"The cardinal rule for construing a will requires that the testator's intent be ascertained by looking to the provisions of the instrument as a whole, as set forth within the four corners of the instrument." *Perfect Union Lodge No. 10, A.F. & A.M., of San Antonio v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex. 1988). "The will should be construed so as to give

effect to every part of it, if the language is reasonably susceptible of that construction." *Id*. (citing *Republic National Bank of Dallas v. Fredericks,* 155 Tex. 79, 83, 283 S.W.2d 39, 43 (1955)). "If the intent can be ascertained from the language of the will, then any particular paragraph, clause or sentence, which, if considered alone, might indicate a contrary intention, must yield to the intention manifested by the whole instrument." *In re Estate of Rogers*, No. 04-06-00555-CV, 2007 WL 1258763, at *2 (Tex. App.—San Antonio May 2, 2007, pet. denied) (mem. op.); *see also Wilkes v. Wilkes*, 488 S.W.2d 398, 401 (Tex. 1972) ("[S]uch intent is the polar star to be used by the courts in the construction of a will.") (citing *Smith v. Bell*, 31 U.S. 68, 80 (1832)). "More latitude is permitted courts in the construction of a will to ascertain the testator's intention than in the construction of a deed." *Briggs v. Peebles*, 188 S.W.2d 147, 149 (Tex. 1945). "The court shall effectuate that intent as far as legally possible." *Perfect Union Lodge*, 748 S.W.2d at 220 (citing *Stewart v. Selder,* 473 S.W.2d 3, 7 (Tex.1971); *Sellers v. Powers,* 426 S.W.2d 533, 536 (Tex. 1968)).

### *Analysis*

I.    **Article III(A) And V(A) of Jose's Will are not Mutually Exclusive.**

    A.    <u>The rules of construction preclude finding Article III or Article V meaningless.</u>

As a preliminary matter, we address the parties' arguments that ***either*** Article III(A) ***or*** Article V determines the beneficiaries of the trust holding the estate's residual assets. According to the parties, the relevant, controlling language is contained in Article III(A) or Article V(A), which, in turn, state:

[I]f my children survive me by ninety (90) days, I give all the rest, residue and remainder of my estate to MARIA MIRTHA M. LOZANO, as Trustee, in trust for my children, for a period of ten (10) years after the date of my death.[4]

[I]n the event that **_any_** of my children, named in Paragraph I hereof, survive me by ninety (90) days, I give the rest, residue and remainder of my estate to MARIA MIRTHA M. LOZANO, as Trustee, in trust for my children, for a period often (10) years after the date of my death to be managed as provided in Article IV, Paragraph B, above.[5]

The parties contend a trust is created under Article III only if **_all_** of Jose's children survive him, while a trust is created under Article V if **_any_** of his children survive him. We reject this approach as it renders one or the other articles meaningless. *See Ochse*, 2020 WL 6749044, at *4 ("We harmonize all provisions and construe the instrument to give effect to all provisions so that no provision is rendered meaningless."); *see also Oleksy v. Farmers Ins. Exch.*, 410 S.W.3d 378, 383 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding court is "not bound to accept the parties' agreed but mistaken interpretation of law"); *Haas v. Voigt*, 940 S.W.2d 198, 201 n.1 (Tex. App.—San Antonio 1996, writ denied) ("[P]arties cannot concede a question of law necessary to the proper disposition of a point of error.").[6]

There is no clear indication that Jose intended the survival of any or all of his children to be mutually exclusive conditions under which a trust would be created, or lead to a different set of intended beneficiaries. A "will should be construed so as to give effect to every part of it." *Perfect Union Lodge*, 748 S.W.2d at 220. Accordingly, absent unambiguous language establishing that these provisions are mutually exclusive, we cannot read them that way. *See McMurray v. Stanley*,

---

[4] Unmodified Article III(A) of the will republished via the Third Codicil.

[5] Unmodified Article V(A) of the will republished via the Third Codicil (emphasis added).

[6] The rules of construction also preclude us from adding the word "all" to Article III(A)—so that it would read: "if all my children survive me"—simply to effectuate the interpretation advanced by the parties. *See San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000) ("[C]ourts must not redraft wills to vary or add provisions 'under the guise of construction of the language of the will' to reach a presumed intent.") (quoting *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980)). Not only would adding the word "all" violate this principle of construction, it would create an apparent conflict with the word "any" which the testator intentionally included in Article V(A).

6 S.W. 412, 413 (Tex. 1887) (holding that "any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument"). "Under established rules of construction, we attempt to harmonize all parts of a will and *thus a latter clause in a will must be deemed to affirm, not to contradict, an earlier clause in the same will.*" *Netherton v. Cowan*, No. 04-12-00627-CV, 2013 WL 4091773, at *3 (Tex. App.—San Antonio Aug. 14, 2013, no pet.) (mem. op.). Accordingly, we reject the initially agreed upon interpretation proffered by the parties that, in this matter, that Article V controls over Article III, **and** the Daughters' alternative argument that Article III controls over Article V. (citation and quotation omitted) (emphasis added).

## II. Jose's Will Establishes a Trust, a Class Gift of Residual Assets, and Substitute Takers for the Residual Beneficiaries.

In seeking an interpretation that harmonizes the two provisions above, we are not confined to an examination of these two provisions alone but must look instead at the whole of the instrument. *See Perfect Union Lodge*, 748 S.W.2d at 220 ("The cardinal rule for construing a will requires that the testator's intent be ascertained by looking to the provisions of the instrument as a whole[.]"); *Estate of Burns*, 619 S.W.3d 747, 752 (Tex. App.—San Antonio 2020, pet. denied) ("When construing a will, we must ascertain the testator's intent from the language contained within the four corners of the will.") (citing *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000)).

A cursory reading of the will makes it clear that Jose's intent was to have the majority of his assets go into a single trust upon his death. *See In re Estate of Rogers*, No. 04-06-00555-CV, 2007 WL 1258763, at *2 (Tex. App.—San Antonio May 2, 2007, pet. denied) (mem. op.) ("As in all will construction cases, the primary issue is how the testator intended to dispose of the

property."). [7] And language governing the distribution of the residuary assets when the trust terminates, helps us determine Jose's intended beneficiaries for the portion of his estate at issue here. For instance, Article V(B), states:

> Subject to Articles II & III, above, if any of my children do not survive my trust termination, then his or her share shall pass to his or her children, equally, in fee simple. I [sic] they do not have any children, then his or her share shall pass to the surviving children, outright. [8]

This language establishes both a primary class of beneficiaries (Jose's children), who stand to inherit a one-quarter portion of the residual assets, and a substitute class of beneficiaries—the children of any child of Jose that is not living when the trust terminates.

> A will devising the residue to a testator's children, share and share alike, indicates a gift to children as a class, and the class constitutes the primary takers of a residuary estate. A provision that in the event any of a testator's children should predecease the testator, the child's share should go to . . . their surviving issue, is a substitutionary provision in case any of the class does not survive the testator and thus fails to take.

96 C.J.S. Wills § 1184. [9]

"Generally, gifts to class members lapse . . . if a member of the class fails to survive the testatrix." *Gregg v. Jones*, 699 S.W.2d 378, 379 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)

---

[7] The overwhelming majority of the will is dedicated to this purpose. Aside from a few immediate gifts mentioned in Article II (that could still go into the trust under certain circumstances), the remainder of Jose's estate (whether destined for class or individual gifts under Articles III, IV, and V) was to go into a ten-year testamentary trust. Articles VI and VII establish the powers of, and the instruction to, the trustee, and Article VIII establish that it will be a spendthrift trust.

[8] Unmodified Article V(B) of the will republished via the Third Codicil (emphasis added). Similar phrasing is also used in the Third Codicil when addressing beneficiaries of specific gifts placed into the trust. *See*, *e.g.*, Article III(a) of the Third Codicil ("If MARIA MIRTHA M. LOZANO survives my ten (10) year trust, I give to her Parcel 4. (l) If MARIA MIRTHA M. LOZANO does not survive my ten (10) year trust, her bequest shall pass, in equal shares, to her children, in fee simple.").

[9] *See also* 96 C.J.S. WILLS § 1177 ("[G]ifts are said to be substitutional when a provision is made for someone to take a gift in the event of the death of the original beneficiary before the period of distribution."); *Id.* ("A testator who desires to prevent a lapse must express such intent or provide for substitution of another devisee in language sufficiently clear to indicate what person or persons the testator intends to substitute for a legatee dying in the testator's lifetime.").

However, even if a class gift is established, the class members are treated as individuals if the testator specifically provides for "the substitution of class members deceased at the time of distribution." *See Martino v. Martino*, 35 S.W.3d 252, 254 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).[10] Accordingly, Articles III(A) and V(A) demonstrate that Jose intended for a ten-year testamentary trust to be created at his death to hold the assets of his estate. Article V(B) establishes that Jose intended that, upon the termination of that trust, a one-quarter portion of residual assets would pass to each of his four children, unless a child did not survive until the trust was terminated, in which case their portion would pass to their children.

But while the phrase "if any of my children do not survive my trust termination" establishes the condition which triggers the substitution described above, it is not entirely clear whether the application of this substitution is further conditioned with the requirement that the child of Jose must be alive when the trust is created. Accordingly, we again look to other portions of the will.

Article III(C)(1), like Article V(B), addresses the substitution of grandchildren for their parent for the residual assets class gift, but does so with more clarity. It states:

> "If any of my children do not survive me by my ten (10) year trust, *__or__* **dies during the term of this trust**, his or her share shall pass to their children, equally, in fee simple."[11]

This language of these clauses presents alternate pathways for the substitution of takers to occur. While these conditions appear similar, they are in fact different. While both apply if a child dies before the trust terminates, the first also applies if a child dies *prior* to the establishment of the

---

[10] *See also* 74 TEX. JUR. 3d Wills § 305 ("A holographic will providing 'In case of my death what property I possess is to be divided equally between my Brothers & Sisters If they are living If not my nearest Relatives their children,' when construed in connection with the surrounding facts and circumstances, evidenced the intention to give to all of the testator's brothers and sisters then living all of the testator's property, to be divided equally among them. If, at the time of the testator's death, any of the testator's brothers and sisters were dead, then their children, if any, should receive the share given under the will to their father or mother.") (citing *Briggs*, 188 S.W.2d at 147) (emphasis added).

[11] Emphasis added.

trust—i.e., *predeceases* Jose. The same alternatives are presented again in Article IV(D), which uses similar but different language to describe the two pathways to substitute takers for the oil, gas, mineral and hunting rights held in the trust.

> If a child of mine does not survive my ten (10) year trust, **or** <u>dies during the existence of the trust</u> . . .[12]

The interpretation of both provisions is influenced by the use of the disjunctive word "or" which makes the first substitutionary path—not surviving testator by his ten year trust—an alternative to a path in which the child dies during the "term" or "existence" of the trust.[13] Ignoring the difference between these two phrases would render one of these conditions both superfluous and meaningless, neither of which is permitted under the rules of construction. ; *See Smith v. Bell*, 31 U.S. at 76 ("[Because] both clauses are equally the words of the testator, are equally binding, and equally claim the attention of those who may construe the will. . . . [w]e are no more at liberty to disregard the last member of the sentence than the first."); *Ochse*, 2020 WL 6749044, at *4.

Accordingly, we conclude that Jose clearly expressed in both Article III and Article V that it was his intent to create a ten-year testamentary trust intent at his death that would hold, residual assets (among other things) for a class of residual beneficiaries—his children. We conclude it was also his intent that, should any child predecease the establishment of the trust, or die during the existence of the trust, the deceased child's children would be substituted in their place as contingent beneficiaries of their parent's portion of the residual assets.

---

[12] Emphasis added.
[13] *See Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 24 (Tex. 2021) ("[T]his Court has recognized that 'or' is typically understood as a disjunctive term, meaning that either of the separated words or phrases may be employed without the other.") (citations omitted); *Reynolds v. Park*, 521 S.W.2d 300, 309 (Tex. App.—Amarillo 1975, writ ref'd n.r.e.) (interpreting a will and noting that "the coordinating particle 'or,' being disjunctive in nature, expresses an alternative").

Therefore, the unambiguous terms of Jose's will as a whole establish that he intended for Eduardo's Children to be substitutes for Eduardo and receive his share of the residual assets if, as here, Eduardo predeceased Jose.

### III. The Circumstances When the Will was Written Confirm Jose Intended a Residuary Gift to Eduardo's Children.

Our interpretation of Jose's intent is also supported when we turn to the specific circumstances existing when Jose executed the Third Codicil. *See Byars v. Byars*, 182 S.W.2d 363, 365–66 (Tex. 1944) ("The object, therefore, of a judicial interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole instrument and a comparison of its various parts in the light of the situation and circumstances which surrounded the testator when the instrument was framed.") (quoting *Colton v. Colton*, 127 U.S. 300, 310 (1888)); *see also Ochse*, 2020 WL 6749044, at \*5 ("[A] court may always receive and consider evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator's position at the time.") (quoting *Lang*, 35 S.W.3d at 639).

It is undisputed that Eduardo passed away more than three months before Jose executed the Third Codicil. Additionally, rather than leaving individual bequests to Eduardo in place, Jose used the Third Codicil to reassign those gifts to the Daughters. The Daughters assert that by removing Eduardo, and his children as substitute takers, from these individual bequests, Jose intended to remove all substitutionary gifts to Eduardo's Children, including the "class" gift of the residuary assets. The Daughters also assert that, by republishing the will via the Third Codicil after Eduardo had died, it would be nonsensical to assume that Jose intended for Eduardo's Children as substitute takers to receive a portion of the residual gift intended for Jose's children—as that class would no longer include a deceased Eduardo. We disagree with both assertions.

While we agree with the Daughters that we must recognize the significance of the republication of the will after Eduardo died, we believe it is more important to focus on the language that remained unchanged in the republished will than to focus on what was removed or changed.

Under the unchanged portion of the will, Eduardo remains part of the class intended to receive the residual assets and, as described above, the language in both Article III(C)(1) and Article V(B) established Eduardo's Children as substitutes for Eduardo's portion of this gift if Eduardo died before the trust terminates or during the existence of the trust. Yet despite being aware of his son's death, Jose did not remove Eduardo's name from the list of his children in Article I and did not remove Eduardo's Children as substitute takers of Eduardo's portion of the residual assets, when he executed the Third Codicil. Accordingly, we conclude that since the will established Eduardo's Children as substitute takers for Eduardo, and Jose left these provisions unchanged when he executed the Third Codicil (which republished the will) after Eduardo's death, the "substitute" gift to Eduardo's Children was actually an original gift to them.

> It often becomes necessary in construing gifts to classes to ascertain whether a gift over in case of death before the period of distribution is a gift by way of substitution, or whether the second set of legatees take an original and substantive gift, and, in determining this question, it should be remembered that a gift to issue is substitutional when the share that the issue are to take is by a prior clause expressly given to the parent of such issue, and original if not so given.

96 C.J.S. Wills § 1184.

In *Allen v. Carson*, this court interpreted a similar substitutionary provision included in a will executed after two of the original class members had died. 165 S.W.2d 798 (Tex. App.—San Antonio 1942, writ ref'd). The provision at issue stated, in part:

> I give, devise and bequeath all the rest, residue and remainder of my personal property . . . unto the children of my sister, Anna Morris, and the children of my brother, Robert F. Allen (who is now deceased), in equal parts . . . . <u>And in the event such child or children of my said brother and sister . . . have departed this life, then the share that they would be entitled to receive, if living, shall be divided and distributed among their lineal descendants per stirpes, if there be any</u>. . . .

*Id*., at 798–99 (emphasis added). The will at issue was executed in 1937, but Robert F. Allen's son Arthur Allen died in 1933 and Robert died in 1935. *Id*., at 799. However, Arthur Allen was survived by a daughter, Lilly Mae Allen. *Id*. In determining that Lilly Mae Allen—intended under the will to be a substitute for her father if he predeceased the testator—would receive her father's portion of the residual estate, this court relied on the fact that the testator was aware Arthur Allen was dead when he executed his will.

> The doctrine applicable to the case at bar is well stated in 69 C.J. 357, as follows: "If the gift to issue, instead of being strictly substitutional, can be construed as an original and substantive gift, the reason for the rule fails (i. e. that the substitutionary legatee cannot take unless the primary legatee could have taken), and such issue take, even though their parents were dead at the date of the will. Thus, if the gift is to the members of a class 'then living, or their issue,' it is construed to mean 'those then living and the issue of those then dead,' thereby including the issue of those dead at the date of the will, since such issue take original shares. So also, where there is a gift to the children of A and then a gift to the issue of any child who may be dead, of the share which the parent would have taken if living, this is really a gift to the issue of the share which the parent of the issue would have taken if living at the death of the testator, and may include the issue of a parent dead at the date of the will, under the principle just stated."
>
> We are in accord with the authorities above referred to and accordingly construe the language used to be broad enough to include as a residuary legatee Lilly Mae Allen, whose father was deceased at the time the will was written.

*Allen v. Carson*, 165 S.W.2d 798, 799 (Tex. App.—San Antonio 1942, writ ref'd) (quoting 69 C.J. Original and Substantive Gifts § 1367(b) (1934)).

Similarly, we conclude that because it is clear that Jose intended for Eduardo's Children to be substitutes for Eduardo and receive his share of the residual assets in the event he died before the trust terminated, and given that 1) Jose knew Eduardo had passed away when he republished

- 13 -

his will via the Third Codicil and 2) did not change their status as substitutionary takers, the gift to them became original in nature, and was not conditioned on Eduardo being alive when the trust was created.

IV. **Appellants' Issues On Appeal.**

A. <u>Issue One and Issue Two need not be addressed</u>.

In their first issue, the Daughters assert the trial court erred because Eduardo's Children are not beneficiaries of Article V's trust. In their second issue, they argue in the alternative that the trial court erred because Article III controls, and Eduardo's Children are not beneficiaries of Article III's trust. Based on our analysis above, we find it is unnecessary to address these issues or the sub issues asserted in support thereof.

However, as addressed above, it is contrary to the rules of will construction to conclude, as the trial court did that Article III was impotent and that Article V alone established the testamentary trust and the gift to Eduardo's Children. *See Netherton v. Cowan*, 2013 WL 4091773, at *3 ("Under established rules of construction, we attempt to harmonize all parts of a will and thus a latter clause in a will must be deemed to affirm, not to contradict, an earlier clause in the same will."). In this appeal, we are tasked with determining all issues presented, and rendering the judgment the trial court should have rendered. *Skelton v. Gray*, 2025 WL 2331546, at *7. Because we find both Article III and Article V remain operative and, in the light of the circumstances when Jose executed the Third Codicil and circumstances codicils, demonstrate that Jose made an original gift to Eduardo's Children of Eduardo's share of the residual assets, we modify paragraphs 1 and 2 of the final judgment to read as follows:

1. The Will of Testator Jose A. Mendoza, as amended by his First, Second, and Third Codicils, devised Petitioners Michelle Iris Mendoza and Eduardo Mendoza Jr. an undivided one-fourth interest in the assets and properties of the testamentary trust created by Article III and Article V;

2.      Petitioners Michelle Iris Mendoza and Eduardo Mendoza Jr. are two of the residuary beneficiaries of the testamentary trust created by Article III and Article V of the Will of Testator Jose A. Mendoza, as amended by his First, Second, and Third Codicils;

B.      <u>Issue Three</u>.

In their third issue, the Daughters assert the trial court erred by entering a take nothing judgment against the Daughters under Article III. We agree.

The intent to create a testamentary trust and a class gift of residuary assets from that trust to his children, is clearly expressed in both Article III and Article V of Jose's will. Because we find both Article III and Article V remain operative, the Daughters' portion of that gift flows from both provisions. Accordingly, it is improper to hold that the Daughters "take nothing under the residuary language of Article III." However, we note that this ruling is a technical one that does not change the rights of the parties. Therefore, the proper remedy is to modify the final judgment by deleting the following language:

> Respondents Melinda Iris M. Gonzalez, Individually and as Independent Executor of the Estate of Jose A. Mendoza, Deceased, Maria Mirtha M. Lozano, and Cynthia Emilia M. Garcia take nothing under the residuary language of Article III of the Will of the Testator Jose A. Mendoza, as amended by his First, Second, and Third Codicils.

We affirm the trial court's final judgment as so modified.

H. Todd McCray, Justice